198 F.2d 571
 WING et al.
v.
ARNALL, Director of Price Stabilization.
 No. 607.
 United States Emergency Court of Appeals
 Submitted August 20, 1952.
 Decided August 21, 1952.
 
 John D. Conner and George A. Burroughs, Washington, D. C., for the complainants.
 Holmes Baldridge, Asst. Atty. Gen., Edward H. Hickey, Chief, Litigation Section, and Katherine H. Johnson, Atty. Department of Justice, and Herbert N. Maletz, Chief Counsel, James A. Durham, Associate Chief Counsel, all of Washington, D. C., and Israel Convisser, Chief, Court Review Division, Office of Price Stabilization, Brooklyn, N. Y., for the respondent.
 Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.
 MARIS, Chief Judge.
 
 
 1
 We now have properly before us for consideration the complainants' motion for a temporary injunction restraining the respondent from enforcing the ceiling price of $81 per ton for soybean oil meal, soybean oil cake, soybean chips and soybean flakes as established by Amendment 3[1] to Section 1(c) of Supplementary Regulation 3 to the General Ceiling Price Regulation, until such time as the validity of that ceiling price shall have been finally determined by this court. The complainants' protest against this regulation was denied by the respondent on July 16, 1952 and on July 22, 1952 the complainants filed their complaint in this court, together with the motion now before us. By order entered August 9, 1952 we deferred consideration of the motion until after we acquired power through the filing of the transcript of the protest proceedings to grant the relief sought. Em.App., 198 F.2d 569. The transcript was filed on August 14, 1952 and is now before us.
 
 
 2
 Section 113(b) of the Act of June 30, 1952, c. 530, 66 Stat. 302, amended Section 408(a) of the Defense Production Act of 1950[2] so as expressly to give to this court "power to grant such temporary relief or restraining order as it deems just and proper". At the same time the Act of 1952 eliminated the following clause of Section 408(c), now Section 408(b), of the Defense Production Act, namely:
 
 
 3
 "except that the court shall not have power to issue any temporary restraining order or interlocutory decree staying or restraining, in whole or in part, the effectiveness of any regulation or order relating to price controls issued under this title."
 
 
 4
 The clause just quoted had previously appeared in the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, § 901 et seq. Thus on June 30, 1952 for the first time since its establishment this court acquired power to grant temporary relief pending final hearing and determination of the validity of a regulation or order over which it has jurisdiction. In this case, the first in which we have been called upon to exercise that power, we are presented at the outset with the question of its extent and the limitations upon it.
 
 
 5
 We turn first to the legislative history. The proposal to vest in this court power to grant temporary relief was not in the bill, S. 2594, which became the Act of June 30, 1952, when it was introduced in the Senate. Nor was it added to the bill by committee amendment in either Senate or House. On the contrary the proposal originated in an amendment offered by Representative Wolcott on the floor of the House of Representatives and adopted by the House during its consideration of the Senate bill. We are, therefore, without the benefit of any committee report and in the debate[3] in the House on the Wolcott amendment no mention was made of this particular proposal among the many included in that amendment. The proposal to give the court power to grant temporary relief was, however, accepted by the Senate conferees and included in the conference report which was adopted by both houses and became the Act of June 30, 1952. In the report of the House conferees the following appears:
 
 
 6
 "In removing the provision which prohibits the court from granting temporary relief it is the intention of the committee of conference that the court grant such relief only in accordance with the applicable principles of equity, and giving due consideration to the effect which such action would have upon the stabilization objectives of the act."[4]
 
 
 7
 In explaining the conference report to the House of Representatives at the time it was being considered for adoption, Representative McCormack, the majority leader of the House, stated:
 
 
 8
 "At the present time, section 408 expressly prohibits the Emergency Court of Appeals from issuing temporary restraining orders under any circumstances. The House bill eliminates that prohibition. The conferees, I am informed, agreed to this change with the understanding that this change in the act is not designed to encourage interim relief in the normal case but rather is intended to provide the court with discretion to enter such orders. The issuance of such an injunction will, of course, be subject to conventional principles of equity jurisdiction. In view of the crucial importance of maintaining effective price control at all times during an emergency period, it is contemplated that the application of conventional equity principles will preclude the issuance of temporary injunctions except in the most unusual cases. The court may, of course, postpone the effectiveness of the temporary injunction to permit amendment of the challenged regulation so that there will be no hiatus in price control."[5]
 
 
 9
 This is the full extent of the legislative history of the provision authorizing this court to grant temporary relief. It is sufficient, however, to make clear the legislative intent that the power should be exercised only in accordance with the applicable principles of equity and then only after giving due consideration to the effect which such action would have upon the stabilization objectives of the act. It seems to be contemplated that only in the most unusual cases will the application of these criteria call for the granting of temporary relief.
 
 
 10
 Before turning to the facts of this case we must determine what are the principles of equity which we are to apply in reaching our decision as to whether or not to grant the temporary relief which the complainants request. In this connection we need consider only those principles which are applicable to the granting of a temporary injunction restraining the enforcement of a regulation or order of general applicability, since that is the only form of temporary relief here sought. It may well be that other types of temporary relief would involve other principles.
 
 
 11
 Temporary injunctions are ordinarily granted to preserve the status quo pending final determination of the controversy between the parties.[6] Where the questions presented by an application for a temporary injunction are grave, and the injury to the complainant will be certain and irreparable if the application is denied and the final decision is in his favor, while if the injunction is granted the injury to the defendant, even if the final decree is in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted.[7] The granting of a temporary injunction is not a matter of right, however, even if irreparable injury might otherwise result to the complainant but is an exercise of judicial discretion.[8] And where a temporary injunction is sought which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the complainant.[9]
 
 
 12
 It is apparent that in the case of an application, such as this, for a temporary injunction against the enforcement of a price regulation of general applicability the complainants do not seek to preserve the status quo but rather to change it in their own interest. It is equally clear that such a change, which would necessarily involve the temporary lifting of the price ceiling in question throughout the United States, might have repercussions in the economy of the nation which it would be impossible to calculate in advance and which would inevitably affect the public interest adversely in ways which could not possibly be compensated by an injunction bond. For no bond could indemnify all the persons in the country who might be affected, directly or indirectly, by the increased prices which might result from such action.
 
 
 13
 When the public interest is involved courts of equity require much stronger grounds for granting temporary relief than they are accustomed to require when only private interests are involved.[10] It is a cardinal principle of equity jurisprudence that a temporary injunction shall not issue in a doubtful case.[11] We think, therefore, that in a case such as the one now before us a temporary injunction should be denied unless we are convinced with reasonable certainty that the complainants must succeed at final hearing. It is only in the very unusual case where we can be reasonably certain in advance of final hearing that the complainants will ultimately prevail that we would be justified in temporarily enjoining the price regulation to which they object. If after hearing the complainants' motion for a temporary injunction we are doubtful as to the ultimate outcome of the case a proper regard for the effect of injunctive action upon the stabilization objectives of the Defense Production Act requires that we do not disturb the status quo unless and until after full and final hearing we become certain that the complainants are entitled to the relief they seek.
 
 
 14
 Applying these principles to the case before us we think it unnecessary at this stage of the proceeding to discuss the facts and issues in any detail. Indeed it would be unwise to do so since we might thereby prejudice the consideration of the issues on final hearing. It is enough to say that our preliminary consideration of the transcript on this motion has not left us reasonably certain that the complainants will succeed on final hearing in sustaining their contention that the ceiling price of $81 for soybean meal violates Section 402(d) (3) of the Defense Production Act, 50 U.S.C.A. Appendix, § 2102(d) (3), and is not generally fair and equitable, as required by Section 402(c) of the act, because the amount realized from sales of soybean meal at the ceiling price and from sales of soybean oil at market prices or even at its suspended ceiling price are inadequate to satisfy the statutory requirements. The motion for a temporary injunction must, therefore, be denied, without prejudice.
 
 
 15
 In denying the motion for temporary relief we think it proper to point out that the complainants will suffer no great delay thereby. For the case will proceed to final hearing just as soon as the parties have filed their briefs pursuant to our Rule 21, 50 U.S.C.A.Appendix following section 924. Under that rule the parties have 46 days after the filing of the transcript and answer in which to file their main briefs and the case then goes on the hearing calendar under Rule 24. This court has been able over the ten years of its existence regularly to schedule final hearings, at the places requested by the complainants, within three weeks, on the average, after the respondent's brief has been filed. The period of 46 days allowed for filing the main briefs in this case will expire on September 29, 1952, and that period will be shortened if the complainants' brief is filed sooner than the rule requires. Accordingly the final hearing of the case will in all likelihood take place early in October and a final decision should follow shortly thereafter.
 
 
 16
 It will be remembered that our power to grant temporary relief does not arise until the filing of the transcript. That will ordinarily be several months after the regulation or order under attack has gone into force. Thus the power to grant a temporary injunction to maintain the status quo by preventing a regulation from being put into effect has not been conferred upon this or any other court. Our only power is to grant a temporary injunction after the case, through the filing of the transcript, is ripe for final determination and when the final hearing merely awaits the filing of the briefs of the parties. In this setting it is apparent that it will be a most unusual case in which the court, upon briefs hurriedly prepared and at a time only two months in advance of final hearing, will grant an injunction temporarily setting aside a price regulation. As the respondent points out, such action will for all practical purposes usually be a final adjudication of the case. For if a price ceiling is set aside, even temporarily, prices will tend to rise and the rise will be likely to be reflected throughout the economy. If so, a roll back upon the subsequent vacating of the temporary injunction may well be difficult, if not impossible. The public interest, therefore, requires that in the normal case determination of the question whether enforcement of a regulation shall be enjoined should await that mature consideration which can only be given after full argument at final hearing, even though the complainants may be further injured by the delay of approximately two months which will be involved.
 
 
 17
 An order will be entered denying the complainants' motion for a temporary injunction.
 
 
 
 Notes:
 
 
 [1]
 Issued and effective April 23, 1952, 17 F.R. 3647
 
 
 [2]
 50 U.S.C.A.Appendix, § 2108(a)
 
 
 [3]
 98 Cong.Rec. 7865, 7866
 
 
 [4]
 House Rep.No.2352, 82d Cong., 2d Sess., p. 25
 
 
 [5]
 98 Cong.Rec. 8593
 
 
 [6]
 Hunter v. Atchison, T. & S. F. Ry. Co., 7 Cir., 1951, 188 F.2d 294, 298
 
 
 [7]
 Ohio Oil Co. v. Conway, 1929, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972; Benson Hotel Corporation v. Woods, 8 Cir., 1948, 168 F.2d 694, 697
 
 
 [8]
 Virginian Ry. Co. v. United States, 1926, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463
 
 
 [9]
 Yakus v. United States, 1944, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834
 
 
 [10]
 Virginian Ry. Co. v. System Federation No. 40, etc., 1937, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789; Yakus v. United States, 1944, 321 U.S. 414, 441, 64 S.Ct. 660, 88 L.Ed. 834
 
 
 [11]
 Hall Signal Co. v. General Ry. Signal Co., 2 Cir., 1907, 153 F. 907, 908