**RUBINSTEIN v. BROWNELL, Attorney General of United States.**

**No. 11683.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 27, 1953.

Decided June 11, 1953.

Mr. Edward J. Ennis, New York City, with whom Mr. Jack Wasserman, Washington, D. C., was on the brief, for appellant.

Mr. Frank H. Strickler, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Charles M. Irelan, U. S. Atty., Washington, D. C., at time of argument, William R. Glendon, Asst. U. S. Atty., Washington, D. C., at time of argument, and Robert M. Scott, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee. Mr. Leo A. Rover, U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, PROCTOR and BAZELON, Circuit Judges.

## EDGERTON, Circuit Judge.

On December 29, 1952, the then Attorney General issued an order for appellant Rubinstein's deportation. On the same day the Attorney General's subordinate the District Director of the Immigration and Naturalization Service ordered appellant's arrest. On December 30, 1952, appellant brought this suit against the then Attorney General for declaratory and injunctive relief. The present Attorney General has been substituted as appellee.

We are not now reviewing the deportation order. We are reviewing only the District Court's denial of a temporary injunction to restrain the appellee from arresting the appellant.

Appellant is an alien whose deportation is sought because he was convicted[1] of filing and conspiring to file false affidavits in an attempt to evade the draft. He served his sentence of two years and six months for this crime. His complaint contends that the crime did not involve moral turpitude and therefore did not make him deportable,[2] and also that the deportation order is invalid for other reasons including lack of due process in the administrative proceedings. It asserts among other things that "defendant is threatening to take plaintiff into custody for the purpose of deporting him and unless restrained will do so, causing plaintiff irreparable injury." With the complaint appellant filed a motion for a temporary restraining order and a preliminary injunction. His counsel filed an affidavit that unless appellee is enjoined appellant will be deprived of liberty until the suit is over; that appellant was allowed bail during the entire administrative proceeding; that the interests of the United States will not be adversely affected by his continued liberty; and that no one has suggested that appellant is hostile to the government or likely to engage in subversive, criminal or reprehensible activities. Appellee has not denied any of these allegations.[3]

The District Court declined to issue a restraining order and Rubinstein appealed. On January 5, 1953, we remanded the case

1. United States v. Rubinstein, 2 Cir.1948, 166 F.2d 249, certiorari denied 333 U.S. 868, 68 S.Ct. 791, 92 L.Ed. 1146.

2. Deportation was sought under § 19(a) of the Immigration Act of 1917, 39 Stat. 889, as amended, 54 Stat. 1238, 8 U.S.

C.A. § 155(a). The parallel provision of the 1952 Act is § 241(a), 66 Stat. 204, 8 U.S.C.A. § 1251(a) (4).

3. Appellee's counsel say in their brief that appellee has not yet determined whether to hold appellant in custody.

452

to the District Court "for consideration of the question of detention in accordance with the principles applicable in habeas corpus proceedings, together with such other questions as may be before the Court." On January 23, 1953, the District Court denied a preliminary injunction. This court entered a temporary restraining order pending this appeal from that denial.

## I.

We adhere to our ruling of January 5 that the legality of appellant's threatened and imminent detention may be tested in this suit by the principles that would be applicable in habeas corpus.

Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, decided March 16, 1953, is not to the contrary. Distinguishing McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173, and overruling decisions of this and two other Courts of Appeals,[4] the Supreme Court held that Heikkila could attack a deportation order only in habeas corpus because § 19 of the 1917 Immigration Act, 39 Stat. 890, under which the order was issued, "clearly had the effect of precluding judicial intervention in deportation cases except insofar as it was required by the Constitution." 345 U.S. at pages 234–235, 73 S.Ct. at page 606. The Court pointed out that it did "not consider the 1952 Act, 66 Stat. 163, which took effect after Heikkila's complaint was filed." 73 S.Ct. 604, note 4._ The 1952 Act, which is the Immigration and Nationality Act, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq., took effect December 24, 1952,[5] before Rubinstein's complaint was filed and even before the order for his deportation was issued. All agree that the 1952 Act and not the 1917 Act governs this suit.

The 1952 Act and its historical background. Unlike the 1917 Act, § 242(b) (4) of the 1952 Act provides that "no

decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence." Unlike the 1917 Act, §§ 242(c) and 242(e) of the 1952 Act expressly recognize that there may be "judicial review" of a final order of deportation. Section 242(c) provides that "the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States * * *."[6]

"Judicial review" is not synonymous with habeas corpus.[7] Nothing in § 242(c) restricts it to habeas corpus.

Section 242(b) (4) of the 1952 Act provides, in practically the same words as § 19(a) of the 1917 Act[8] which the Supreme Court construed in Heikkila, that "In any case in which an alien is ordered deported from the United States under the provisions of this Act, or of any other law or treaty, the decision of the Attorney General shall be final." But as the Supreme Court said in Heikkila, "That the Attorney General's decisions are 'final' does not settle the question. * * * Read alone, [the term] might refer to the doctrine requiring exhaustion of administrative remedies before judicial process can be invoked." 345 U.S. at page 233, 73 S.Ct. at page 605. The Court had repeatedly held, before 1917, that in immigration legislation the word "final" was "intended to make these administrative decisions nonreviewable to the fullest extent possible under the Constitution." In Heikkila the Court held, "against this background of a quarter of a century of consistent judicial interpretation" before 1917, that § 19 of the 1917 Immigration Act "clearly had the effect of precluding judicial intervention in deportation cases except insofar as it was required by the Constitution" 345 U.

4. Note 10, infra.

5. § 407, 66 Stat. 281, 8 U.S.C.A. § 1101 note.

6. Emphasis added.

7. The Supreme Court said in the Heikkila case: "it is the scope of inquiry on

habeas corpus that differentiates use of the writ from judicial review as that term is used in the Administrative Procedure Act." 345 U.S. at page 236, 73 S.Ct. at page 607.

8. 39 Stat. 890, as amended, 54 Stat. 1238, 8 U.S.C.A. § 155(a).

S. at pages 234, 235, 73 S.Ct. at page 606;[9] that is to say, except in habeas corpus.

The 1952 Act has a very different background of judicial interpretation. In 1948, 1949, and 1950, three Courts of Appeals including this one ruled [10] that despite previous legislation making the Attorney General's deportation orders "final", they were subject to review under § 10 of the Administrative Procedure Act which Congress passed in 1946.[11] Throughout the time when Congress was considering and adopting the 1952 Act which we are construing, this was the unanimous view of the Courts of Appeals.

In dealing with other sorts of legislation, the Supreme Court had repeatedly held that the word "final" does not necessarily exclude, or limit to habeas corpus, judicial review of administrative action. Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, is an example. Accordingly it had become common before 1952 for Congress, when it wished to preclude or restrict judicial review, to do so by express language and not to rely on the word "final". Section 601(e) of the Revenue Act of 1936, 49 Stat. 1740, provided that "The determination of the Commissioner of Internal Revenue with respect to any refund under this section shall be final and

no court shall have jurisdiction to review such determination." A 1940 amendment of the World War Veterans Act of 1924, 54 Stat. 1197, 38 U.S.C.A. § 11a–2, provided that "the decisions of the Administrator of Veterans' Affairs on any question of law or fact concerning a claim for benefits * * * shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decisions." [12] A 1941 Excess Profits Tax amendment, 55 Stat. 26, provided that certain determinations of liability by the Board of Tax Appeals (now the Tax Court of the United States) "shall not be reviewed or redetermined by any court or agency except the Board."

Section 360(c) of the 1952 Act itself provides, as to persons *seeking admission* to the United States, that "A final determination by the Attorney General that any such person is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction *in habeas corpus proceedings and not otherwise.*" [13] The fact that Congress said clearly what it meant in § 360(c) with regard to admission is strong evidence that it did not mean what it did not say in § 242 (c) with regard to deportation.[14]

---

**9.** The Court added "the decisions have continued to regard this point as settled." 345 U.S. at page 235, 73 S.Ct. at page 606. But all citations except "Sunal v. Large, 332 U.S. 174, 177, n. 3 (1947) [67 S.Ct. 1588, 1590, 91 L. Ed. 1982",] date from before the passage of the Administrative Procedure Act in 1946. The cited Sunal footnote reads: "We therefore lay to one side cases such as Bridges v. Wixon, 326 U.S. 135, [65 S.Ct. 1443, 89 L.Ed. 2103]; Duncan v. Kahanamoku, 327 U.S. 304, [66 S.Ct. 606, 90 L.Ed. 688,] and Eagles v. United States ex rel. Samuels, 329 U.S. 304, [67 S.Ct. 313 [91 L.Ed. 308], where the order of the agency under which petitioner was detained was not subject to judicial review."

**10.** United States ex rel. Trinler v. Carusi, 3 Cir., 1948, 166 F.2d 457; Podovinnikoff v. Miller, 3 Cir., 1950, 179 F.2d 937; Kristensen v. McGrath, 1949, 86 U.S.App.D.C. 48, 179 F.2d 796, affirmed in McGrath v. Kristensen, 1950, 340 U.S.

162, 71 S.Ct. 224, 95 L.Ed. 173; Prince v. Commissioner, 6 Cir., 1950, 185 F.2d 578.

**11.** 60 Stat. 237, 5 U.S.C.A. § 1001 et seq.

**12.** Van Horne v. Hines, 74 U.S.App.D.C. 214, 122 F.2d 207.

**13.** Emphasis added.

**14.** Section 242(c) provides that "Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General *concerning detention, release on bond, or other release during such six-month period upon a conclusive showing in habeas corpus proceedings* that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period." (Emphasis added.)

As the Second Circuit has held regarding practically the same language in §

*Legislative history of the 1952 Act.* While the Act and its predecessor bills were pending, Congress considered and rejected proposals that would have had the effect of exempting deportation proceedings under the Act from review under § 10 of the Administrative Procedure Act.

In the 81st Congress, Senator McCarran introduced on April 20, 1950, a bill to revise the immigration and nationality laws. (S. 3455, 81st Cong., 2d Sess.) It provided in § 106 that "Notwithstanding the provisions of any other law—(a) determinations of fact by administrative officers under the provisions of this Act or regulations issued thereunder shall not be subject to review by any court; (b) determinations of law by administrative officers under the provisions of this Act or regulations issued thereunder shall not be subject to review by any court except through the writ of habeas corpus; and (c) the exercise of discretionary authority conferred upon administrative officers by this Act or regulations issued thereunder shall not be subject to review by any court."

In the 1st Session of the 82d Congress, a revised bill introduced by Senator McCarran (S. 716) and a bill introduced by Congressman Walter (H.R. 2379) contained similar provisions, but a bill introduced by Congressman Celler (H.R. 2816) did not.

There were joint hearings on these three bills. Representatives of the American Bar Association and many other organizations opposed restriction of judicial review and urged continued application of § 10 of the Administrative Procedure Act.[15] After these hearings a revised bill, S. 2055, introduced by Senator McCarran in the 1st Session of the 82d Congress; H.R. 5678, introduced by Congressman Walter in the 2d Session of the 82d Congress; and a revised bill, S. 2550, introduced by Senator McCarran in the 2d Session of the 82d Congress, all omitted the provisions of § 106 of the previous bills. The Immigration and Nationality Act as adopted omits them.[16]

During the House debate on April 24, 1952, Congressman Meader proposed to amend the bill by providing expressly that "the order of deportation shall be subject to review by any court of competent jurisdiction". 98 Cong.Rec. p. 4415. Congressman Walter, co-author of the bill, in opposing the amendment said (p. 4416): "Now, we come to this question of the finality of the decision of the Attorney General. That language means that it is a final decision as far as the administrative branch of the Government is concerned, but it is not final in that it is not the last remedy that the alien has. Section 10 of

242(a), this sentence "provides but an added statutory recognition of a basis for judicial review, not a limitation upon the power * * *." United States ex rel. Yaris v. Esperdy, 202 F.2d 109, 112. (1) Read literally the sentence grants, and does not withdraw or restrict, authority to review. (2) It does not touch the subject of review, in habeas corpus or otherwise, of deportation orders, but relates only to review of "detention, release on bond, or other release" when the Attorney General is not proceeding with "reasonable dispatch" to effect a deportation. (3) The six-month period referred to, during which this sentence authorizes review of these matters, begins to run only after "a final order of deportation * * * or, if judicial review is had, then from the date of the final order of the court * * *." (4) So far if at all as the sentence in question may *imply* that the matters to which it refers, during the time to which it refers, may be reviewed only in habeas corpus, it

implies that review of other matters and review at other times are not so limited.

15. *Joint Hearings before the Subcommittees of the Committees on the Judiciary* on S. 716, H.R. 2379, H.R. 2816, 82d Cong., 1st Sess., pp. 144, 446, 536–7, 590–1, 617–18, 699, 735.

16. The Senate Judiciary Committee's Report No. 1137, 82d Cong., 2d Sess., January 29, 1952, on S. 2550 said the omission of the provisions of the former bills restricting review to habeas corpus was (p. 28) "not intended to grant any review of determinations made by consular officers, nor to expand judicial review in immigration cases beyond that under existing law." "Existing law" at that date included the Administrative Procedure Act as it had been interpreted in 1948, 1949, and 1950 by the Trinler, Kristensen and Prince decisions, supra, note 10. It did not include the Heikkila case (1953) which overruled those decisions.

the Administrative Procedure Act is applicable. From that decision an appeal lies in the courts. * * * In view of the fact that every person who is ordered deported has all of these administrative processes available, plus an appeal to the court, plus the right to a writ of habeas corpus, I cannot conceive of a case where any injustice would be done by some capricious or arbitrary administrator." The Meader amendment was defeated.

In the Senate debate Senator McCarran said on May 22, 1952 (98 Cong.Rec. p. 5778): "The Administrative Procedure Act is made applicable to the bill. The Administrative Procedure Act prevails now."

## II.

In our opinion the appellant, if he were under arrest, would be entitled to release in habeas corpus.

██ To justify the proposed arrest the appellee relies on § 242(c) of the 1952 Act. We think it inapplicable. The six-month period during which § 242(c) gives the Attorney General discretion to detain an alien who has been ordered deported begins to run "if judicial review is had, then from the date of the final order of the court". There has not yet been a final order of the court. The purpose of the detention authorized by § 242(c) is "to effect the alien's departure from the United States". All agree that departure cannot be effected while the deportation order is under review.

The appellee does not rely on § 242(a), which relates primarily to the period before a final administrative deportation order is issued. Read literally, it may relate only to that period. But Congress can hardly have meant to give the Attorney General no authority to arrest the alien, in any circumstances, during the present interval between the final administrative deportation order and the final order of the court. To avoid such a gap in the statute, we read the arrest provisions of § 242(a) as applicable during this interval.

██ Section 242(a) authorizes the Attorney General to keep an alien in custody, release him on bond, or release him on conditional parole. The Attorney General arrested the appellant and released him on bond. It also authorizes the Attorney General "in his discretion" to revoke the bond or parole and take the alien into custody again. But discretion in this connection is a reasonable discretion, not an arbitrary and capricious one. Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547, was a habeas corpus case decided under a provision of the Internal Security Act of 1950, 64 Stat. 1010, 8 U.S.C.A. § 156(a), which likewise authorized the Attorney General in his "discretion" to keep an alien in custody pending final determination of his deportability. The Court said: "Respondent filed returns defending his orders of detention on the ground that there was reasonable cause to believe that petitioners' release would be prejudicial to the public interest and would endanger the welfare and safety of the United States. * * * The Government does not urge that the Attorney General's discretion is not subject to any judicial review, but merely that his discretion can be overturned only on a showing of clear abuse. * * * When in the judgment of the Attorney General an alien Communist may so conduct himself pending deportation hearings as to aid in carrying out the objectives of the world communist movement, that alien may be detained. * * * This is a permissible delegation of legislative power because the executive judgment is limited by adequate standards." 342 U.S. at pages 529, 540, 544, 72 S.Ct. at page 528. United States ex rel. Yaris v. Esperdy, supra, note 14, was a habeas corpus case under the Immigration and Nationality Act of 1952. The Second Circuit said: "When there has been a revocation and a rearrest on the warrant, the test on habeas corpus of the lawfulness of the resulting detention is whether under the prevailing circumstances the Attorney General exercised a sound discretion". The court ruled, rightly we think, that "an allegation in the return that the appellant was engaged in communist activities up to the time of his rearrest sufficiently refutes the claim that there was an abuse of discretion by the Attorney General in revoking his bail and taking him into custody." 202 F.2d at page 111.

The Carlson case governs this one. The assertions in his counsel's affidavit that appellant is not hostile to the Government or likely to engage in subversive, criminal, or reprehensible activities are undenied. As we noted in our order of January 26, 1953, appellee's counsel informed us that no injury to the public interest is to be anticipated from postponing appellant's arrest. There is no suggestion that he will flee or hide. Counsel suggest a desire to question him but do not show that he cannot be questioned without being arrested. The record shows no reason for the order of arrest, apart from the uncontradicted statements in the complaint that the original defendant, the former Attorney General, "received many letters, telegrams and other communications urging plaintiff's deportation" and his "attention was directed to newspaper columns urging plaintiff's deportation." Neither appellant's criminal record nor his unpopularity justifies imprisoning him. As far as the record shows, his arrest under § 242(a) would be a clear abuse of discretion. We have shown that § 242(c) does not authorize his arrest while judicial review of the deportation order is pending.

As we held on the former appeal, the question of detention must be decided in accordance with the principles applicable in habeas corpus proceedings. In accordance with those principles, the question of detention is entirely independent of the question who is likely finally to prevail in regard to the validity of the deportation order. If the order be upheld, that will not retroactively legalize a previous arrest. There is no occasion to balance equities. Even if there were, the record contains nothing that could outweigh the irreparable loss of personal liberty which would follow from an arrest.

In denying a preliminary injunction the District Court declared that the crime for which appellant had served a term involved moral turpitude. But this is only one of the issues, raised by the complaint, on which the validity of the deportation order will depend. To avoid piecemeal appeals, we shall not consider this issue until the others have been heard. The case is accordingly remanded to the District Court for further proceedings, with directions to issue a preliminary injunction restraining appellee from revoking appellant's bail and from taking him into custody on a warrant of arrest for deportation, pending final determination of this suit, unless the appellee shows to the court that there are adequate reasons for making the arrest.

Reversed and remanded.

PROCTOR, Circuit Judge (dissenting).

The majority opinion holds that upon the present record the Attorney General has no authority to arrest Rubinstein while judicial review is pending and that an arrest would be a clear abuse of discretion. They conclude that the "question of detention must be decided in accordance with the principles applicable in habeas corpus proceedings." They remand the case for further proceedings, with directions to issue a preliminary injunction against the arrest of Rubinstein unless adequate reasons are shown.

It seems to me confusing, if not misleading, to involve the question of a preliminary injunction with the principles of habeas corpus. The District Court's authority to grant the injunction rests upon its general powers to preserve pendente lite its jurisdiction over the case or prevent irreparable injury. If I thought the present situation required a preliminary injunction I would put its issuance upon those grounds. However, I am convinced that there is no present need for such action. Therefore, in my opinion, the injunction directed by the majority is an unwarranted encroachment upon and interference with the authority and responsibility of the Attorney General. The practical effect of the injunction is to strip the Attorney General, during the period of judicial review, of his statutory authority to control and supervise an alien[1] who has been ordered deported, although, obviously, control and supervision are more essential after the order than before. As Judge

1. Immigration and Nationality Act, 66 Stat. 208 § 242(a) and (c), 8 U.S.C.A. § 1252(a) and (c).

Fahy points out in dissenting from the temporary restraining order of January 26, 1953 (J.A. 57), under section 242(c) the Attorney General is authorized, when proceedings have progressed to a final order of deportation, to detain the alien, release him on bond in an amount and containing such conditions as the Attorney General may prescribe or release him on such other conditions as the Attorney General may prescribe; also the warrant under which the Attorney General now allegedly seeks to apprehend and detain Rubinstein does not exhaust that official's discretion under the statute.[2] It is significant too that although sections 242(a) and 242(c) seem to recognize that an order of deportation may be judicially reviewed, there is nothing to suggest any power in the court to interfere with the Attorney General's authority to supervise and control during the period of court review. This, I think, clearly implies that the power remains with the Attorney General. Doubtless, arbitrary arrest or detention by him could be challenged by habeas corpus, a speedy and simple remedy quite in contrast to the time-consuming procedure here, but so far there is no detention. Nor do I think the many allegations in the unsworn complaint and in the attorney's supporting affidavit, abounding in hearsay, inference and conjecture, justify any reasonable apprehension of arbitrary or abusive action.

As I view the matter, the critical question now is whether pending a final determination of the case a sufficient showing has been made to warrant an injunction against Rubinstein being taken into custody or detained by the Attorney General. I think not. Although it is charged that the deportation proceedings are lacking in due process and the deportation order is invalid, there is no substantial support for that position, unless it be that the crime of which Rubinstein was convicted did not involve moral turpitude. If it did, then under the applicable statute [3] it became the duty of the Attorney General, upon his

warrant, to take Rubinstein into custody and deport him. Admittedly the deportation order is grounded upon Rubinstein's conviction, April 23, 1947, on five counts of an indictment for knowingly making false statements, and conspiring so to do, to avoid the draft, in violation of Selective Training and Service Act of 1940, § 11, 54 Stat. 894, 50 U.S.C.A. Appendix, § 311, for which he served concurrent sentences of two years and six months' imprisonment. See United States v. Rubinstein, 2 Cir., 166 F.2d 249, certiorari denied, Foster v. U. S., 1948, 333 U.S. 868, 68 S.Ct. 791, 92 L.Ed. 1146. I do not doubt that these crimes involve moral turpitude. In essence they do not differ from the crime of perjury and subornation of perjury, which clearly do involve that element. United States ex rel. Boraca v. Schlotfeldt, 7 Cir., 1940, 109 F.2d 106; United States ex rel. Karpay v. Uhl, 2 Cir., 70 F.2d 792, cert. denied, 1934, 293 U.S. 573, 55 S.Ct. 85, 79 L.Ed. 671; Masaichi Ono v. Carr, 9 Cir., 1932, 56 F.2d 772. Regardless of all else, the deportation order is supported by the indisputable facts of the criminal conviction and imprisonment, established in the deportation proceedings, and the necessary legal conclusion, as I believe, that the crimes did involve moral turpitude. I therefore do not think any substantial question is presented to raise a reasonable belief that the plaintiff will prevail upon a final hearing. Accordingly a preliminary injunction or stay of any kind should be denied. Hall Signal Co. v. General Ry. Signal Co., 2 Cir., 1907, 153 F. 907; Zugsmith v. Davis, D.C.S.D.N.Y.1952, 108 F. Supp. 913; United States v. Libby, McNeill & Libby, D.C.D.Alaska 1951, 98 F.Supp. 601; Atlantic & Gulf/West Coast v. United States, D.C.S.D.N.Y.1950, 90 F.Supp. 554. See also Public Serv. Comm. v. Wis. Tel. Co., 1933, 289 U.S. 67, 70, 53 S.Ct. 514, 77 L.Ed. 1036, 1038; Mass. State Grange v. Benton, 1926, 272 U.S. 525, 47 S.Ct. 189, 71 L.Ed. 387; Perry v. Perry, 1951, 88 U.S.App.D.C. 337, 190 F.2d 601;

---

2. This, I think, is true whether section 242(a) or 242(c) is read as controlling upon the Attorney General during the period of judicial review.

3. Act of Feb. 5, 1917, § 19, 39 Stat. 889, 8 U.S.C.A. § 155(a).

**458**

Wing v. Arnall, Em.App.1952, 198 F.2d 571.

Finally, I suggest that it cannot be supposed the Attorney General will go forward with deportation pending final determination of judicial review. It is fair to assume that the present action of that officer is designed to reconsider and adjust the terms of Rubinstein's release in view of the deportation order. This assumption comports with assurance to the court by the Attorney General's counsel "that he has not at this point in the administrative proceedings determined whether the alien shall be detained, released on bond or released otherwise."