Jose Angel OCON, Appellant,

v.

Herman R. LANDON, District Director, Immigration and Naturalization Service, Respondent.

United States Court of Appeals, Ninth Circuit.

Dec. 18, 1954.

Irwin Gostin, Hollywood, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, James R. Dooley, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS and CHAMBERS, Circuit Judges, and HARRISON, District Judge.

STEPHENS, Circuit Judge.

We are considering an appeal by Jose Angel Ocon from an order of the district court dismissing a petition for the issuance of the writ of habeas corpus in which petitioner sought to be released on bail bond from the custody of respondent, pending termination of an action in the district court wherein petitioner alleges that an administrative order to deport appellant is wholly illegal.

Prior to the filing of the petition for habeas corpus, Ocon had been arrested under an Attorney General's warrant issued in a proceeding to deport him as an alien who "is or at any time has been after entry a member of the Communist Party of the United States"[1] under the provisions of the Immigration

---

1. We shall hereinafter abbreviate the wording of the charge to "alien Communist".

and Naturalization Act of 1952.[2] Before the hearing on the charge, he had been released on bail from detention and later, but before the issuance of the deportation order, he had been retaken into custody and was held without the privilege of bail. The administrative hearing resulted in the issuance of an order for Ocon's deportation and he was continued in custody by respondent Landon in his official capacity as District Director of Immigration and Naturalization Service.

After the order of deportation had issued, Ocon filed an action in the district court against Landon as director etc. for an injunction restraining Landon from enforcing, executing, or otherwise carrying into effect the final order of deportation, alleging in his complaint that he was not afforded due process of law in the deportation proceedings, and that the order was contrary to the evidence, and that the proceedings were based upon a statute unconstitutional upon its face, citing the following statutory enactments:

"Act of June 27, 1952, 8 U.S.C.A. § 1329, and Act of June 11, 1946, 5 U.S.C.A. §§ 1001–1011 and 10, 5 U.S.C.A. § 1009."

For a second cause of action in the same complaint Ocon alleged that a controversy existed "as to whether defendant may deport, attempt to deport, or require plaintiff to surrender for deportation" and contends that the deportation order "is arbitrary and illegal because it is not supported by reasonable substantive and probative evidence and is based upon incompetent evidence; that the order was entered without observance of procedure required by law * * *;" and the order is in violation of the First, Fifth, and Eighth Amendments to the Constitution of the United States. For brevity and to distinguish it from the habeas corpus proceeding, we shall refer to this case as the "declaratory case".

Under the complaint which has just been outlined, the district court issued its order for Landon, the defendant, to appear at a day certain and show cause why he should not be "enjoined and restrained during the pendency of this action from deporting * * * or removing * * * plaintiff from the Southern District of California and from requiring the surrender of plaintiff or taking him into custody for deportation." It was further ordered that, pending hearing on the show cause order, plaintiff should not be removed from the Southern District of California.

It was and is contended by Ocon that the pendency in the declaratory case rendered respondent powerless to deport him and therefore holding him in custody was and is illegal. If we understand it, petitioner contends that since he has been taken into custody and there is pending in the declaratory case the attack on the administrative procedure which resulted in the deportation order, and petitioner has shown by his complaint therein that substantial issues are presented, he is entitled therefore to be released on bail while that case winds its long course toward finality. If petitioner is right in this, it follows that the protection to the United States from alien Communists by their continued governmental custody after the order of deportation and until final decision in a court review, is completely nullified. Hereinafter we shall show that the government is not so impotent.

The habeas corpus proceedings alluded to were filed before the hearing on the show cause order, issued in the declaratory case, and while Ocon was in Landon's custody pursuant to the Attorney General's order heretofore referred to. In that (the habeas corpus proceeding) Ocon demanded his release from custody on reasonable bail pending determination of the district court review and declaratory action.

It is not asserted in Ocon's habeas corpus petition or in his traverse to respondent's Return that he is or is not a citizen or national of the United States, nor that he has not been or is not a

2. Title 8 U.S.C.A. § 1251, June 27, 1952, c. 477, Title II, ch. 5, § 241, 66 Stat. 204.

Communist.[3] And since he does not deny the status of an alien or that he has been or is a Communist, these facts are admitted so far as the habeas corpus proceeding is concerned. However, he recites in his petition the fact of his original arrest, his release on bond, his retaking into custody, the order of deportation, and the pendency of the district court action. He goes on and asserts that "the revocation of administrative bail and the refusal to admit the petitioner to bail during the pendency of the proceedings and the final determination of the issues raised by petitioner's complaint," was ordered without any showing by "Respondent [Landon] of any change of circumstances warranting the revocation of administrative bail * * * during the pendency of the proceedings and the final determination of the issues raised by petitioner's complaint, * * * and that the action of the Respondent [in revoking bail and holding him in custody] is arbitrary and void and capricious."

▆▆ Ocon argues in his brief that § 242(c) of the Act, 8 U.S.C.A. § 1252(c), does not justify the re-arrest, citing the case of Rubinstein v. Brownell, 1953, 92 U.S.App.D.C. 328, 206 F.2d 449, 455, affirmed by an equally divided court, 346 U.S. 929, 74 S.Ct. 319. That section of the Act refers to admission to bail after order of deportation has issued and during the six months' period following the order. Whatever comfort Ocon can get from this holding is more than dissipated for in the cited case the court held that § 242(a) of the Act effectually covers the situation found in our case

which is, that the power and discretion of the Attorney General to permit and deny bail is not exhausted when that official once permits bail. The court in the Rubinstein case quoted from U. S. ex rel. Yaris v. Esperdy, 1953, 2 Cir., 202 F.2d 109, 111: "'When there has been a revocation and a rearrest on the warrant, the test on habeas corpus of the lawfulness of the resulting detention is whether under the prevailing circumstances the Attorney General exercised a sound discretion.'" And we think this test applies throughout the deportation and court proceedings until the alien is deported or is finally declared to be non-deportable.

▆▆ But Ocon does not rest here. He seems to contend that the principle just stated does not permit repetitive rulings by the Attorney General on the same showing; that, having used his discretion as to the information in hand, he cannot, at a later date, revise his estimation thereof and come to the conclusion thereafter that Ocon is too much of a security risk to be at large. But even if he may permit bail and afterward cancel and retake the alien into custody, he must act on new information, and that in this case there was nothing new.

The case of Carlson v. Landon, District Director of Immigration and Naturalization Service, 9 Cir., 1950, 186 F.2d 183, 1951, 187 F.2d 991, affirmed 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547;[4] is final authority for the principle that an alien charged, in deportation proceedings, with having been a Communist or of being a Communist, may be taken into custody and held without bail if

---

3. It is said in U. S. ex rel. Yaris v. Esperdy, 2 Cir., 1953, 202 F.2d 109, 111, "(4) The allegations in the return above set forth which the appellant declined either to admit or deny are enough to show that his present detention is not due to the arbitrary or capricious action of the Attorney General."

4. Carlson v. Landon (No. 12,742): In habeas corpus proceedings a district court held that respondent had not abused his discretion in ordering petitioners held

without bail pending deportation hearings. 94 F.Supp. 18. The Court of Appeals, 9 Cir., reversed and remanded with instructions. 186 F.2d 183. On rehearing and after introduction of certain evidence by the Director of Immigration, the district court again sustained petitioners' detention without bail. The Court of Appeals, 9 Cir., affirmed, 187 F.2d 991. The United States Supreme Court granted certiorari, 342 U.S. 807, 72 S.Ct. 26, 96 L. Ed. 610, and affirmed, 342 U.S. 524, 547, 72 S.Ct. 525, 96 L.Ed. 547.

the Attorney General has good cause for believing that the alien is dangerous to the United States when at large. We are of the opinion that this principle is not vitiated by the Attorney General's admission of the alien to bail as heretofore related. The bail may be revoked at any time during the pendency of the proceedings upon sound, informed, discretion, and it is the solemn duty of the Attorney General to revoke the bail the moment he has information which in reason appears to subject the United States to hurt by the alien while at large. Title 8 U.S.C.A. § 1252(a) (3). As was said in United States ex rel. Hyndman v. Holton, 7 Cir., 1953, 205 F.2d 228, 231: "That the department may have at one time admitted appellant to bail and acquiesced in her [the subject] remaining at liberty on bail for a long period, cannot in itself be a sufficient reason for the allowance of bail on Oct. 7, 1952. Those acting for the department may have concluded that it was poor judgment to have admitted her to bail at any time. Her ready response at all times while on bail is a circumstance that may be considered, but is in no sense controlling in the determination of whether the Attorney General has acted arbitrarily."

We do not understand our release of Hyun in the case of Hyun v. Landon, 1953, No. 14058, from custody upon bail was in any manner inconsistent with what we have just said or inconsistent with the above quotation from Judge Briggle's opinion in the Hyndman case, as appellant contends. Hyun was one of the several persons charged with being deportable, all of which were considered in the Carlson case. He was held without bail and the Attorney General was sustained. Subsequently, Hyun was admitted to bail, then he was again taken into custody. We granted bail pending review of deportation proceedings. In doing so, we followed Mr. Justice Douglas, as we understood his views in Carlisle v. Landon, 1953, 73 S.Ct. 1179, 97 L. Ed. 1642, (Carlisle was one of the persons in the Carlson group). We understood Mr. Justice Douglas to hold that, in the circumstances obtaining when he granted bail, there was not sufficient showing that the Attorney General had acted upon an *informed* discretion. That doctrine is sound.

What was said in U. S. ex rel. Yaris v. Esperdy, 1953, 2 Cir., 202 F.2d 109, 111, and appeared in Rubinstein v. Brownell, 1953, 206 F.2d 449, 455, is pertinent: "* * * an allegation in the return that the appellant was engaged in communist activities up to the time of his rearrest sufficiently refutes the claim that there was an abuse of discretion by the Attorney General in revoking his bail and taking him into custody."

In addition to the information originally held by the Attorney General in our case, there was much more, including activities almost up to the time of the Attorney General's action in revoking bail. We support this statement by quoting from respondent's return in the margin, preceded by a brief analysis.[5]

Petitioner's traverse denied none of the asserted facts as to petitioner's actions as set out in the return. In the

---

The doctrine of the Carlson case, as expressed by this court and by the Supreme Court, was applied to the following cases, all of which were companion cases to the Carlson case: Stevenson v. Landon (No. 12,743), Hyun v. Landon (No. 12,744), and Carlisle v. Landon (No. 12,745), 186 F.2d 190.

See, also, United States ex rel. Yaris v. Esperdy, 2 Cir., 1953, 202 F.2d 109; United States ex rel. Nukk v. Dist. Director, 2 Cir., 1953, 205 F.2d 242; United States ex rel. Young v. Shaughnessy, 2 Cir., 1954, 194 F.2d 474; United States

ex rel. De Geronimi v. Shaughnessy, 2 Cir., 1951, 187 F.2d 896; United States ex rel. Potash v. District Director, 2 Cir., 1948, 169 F.2d 747.

See, also, Galvan v. Press, 9 Cir., 1953, 201 F.2d 302, affirmed 347 U.S. 522, 74 S. Ct. 737, rehearing denied, 1954, 348 U.S. 852, 75 S.Ct. 17.

The Carlson case was decided under § 23 of the Internal Security Act of 1950, 64 Stat. 1010. The comparable section in the 1952 Act is the same in principle.

5. We analyze the situation as it appears in the instant proceedings:

"Order Denying Petition for Writ of Habeas Corpus and Discharging Order to Show Cause," the court said:

"* * * [A]nd the Court having considered the Petition for Writ of Habeas Corpus, the Return thereto, and all documents and pleadings heretofore filed in this cause; and counsel for petitioner having represented to the Court that by filing the Petition herein, he did not seek judicial review of the outstanding

The affidavit of H. R. Landon, filed as his Return, states, in brief:

The United States Immigration and Naturalization Service file shows, as to Jose Angel Ocon:

Sept. 1, 1953—Warrant of arrest in deportation proceedings, charges membership of alien in Communist Party.

Oct. 14, 1953—His arrest.

Nov. 11, 1953—Released on $5,000 bail bond.

Oct. 26, 1953—Nov. 10, 1953, Nov. 19, 1953—Hearings at which alien refused to be sworn, or to give testimony. At the hearings, two witnesses, former members of the Communist Party, one a member as an informer, both identified petitioner as member from 1939 to 1942. An order of deportation followed.

Dec. 17, 1953—The Board of Immigration Appeals dismissed appeal from the Special Inquiry Officers' decision.

June 24, 1954—Warrant of deportation issued.

June 25, 1954—Petitioner notified of final order of deportation to occur July 19, 1954. Surety was notified to surrender petitioner and was complied with.

We quote from the affidavit (return) of H. R. Landon, District Director, (Record on appeal, pp. 34–36 incl.):

"That in addition to the evidence developed in the administrative hearings, confidential information, the source of which cannot be disclosed, has been received and is in the possession of the Immigration and Naturalization Service to the effect that the petitioner is presently active in the Communist Party and Communist Front organizations, and has been so engaged from at least the year 1936 until 1954 with no indication that he has terminated such activity. That specific dates and places cannot be stated in this affidavit as to do so would in many instances in effect disclose the source of information and result in the exposure of valuable confidential informants, thereby effectively destroying their future usefulness in combatting subversive activities. That he is a group leader in the El Sereno Club of the Communist Party in Los Angeles, California. That he is active in distributing Communist propaganda leaflets and the 'Peoples' World'; is a member of, and active in, the 'Asociation National Mexicana Americana', and the Los Angeles Committee for the Protection of the Foreign Born (The local unit of the American Committee for the Protection of the Foreign Born), which organizations have been cited by the Attorney General of the United States as subversive and Communist, the American Committee for the Protection of the Foreign Born having also been named by the Special Committee on Un-American Activities (Report of March 29, 1944, Page 155) as 'one of the oldest auxiliaries of the Communist Party of the United States'. In 1946 he was a member of the Rincon Club of the Communist Party; in 1946 a member of the North Hollywood Branch of the Los Angeles County Communist Party, having transferred from the Rincon Club; in 1947 a member of the 13th Congressional District of the Los Angeles County Communist Party; in 1949 the petitioner was named the financial organizational secretary of the Mexican Concentration Club of the Los Angeles County Communist Party; on January 12, 1951, attended a Civil Rights Congress dinner given for William Patterson; in March of 1952 acted as a sponsor for a new member in the Los Angeles County Communist Party. That he has actively participated in meetings of the Los Angeles County Committee for the Protection of the Foreign Born in Los Angeles, California, during the period from November, 1953, up to and including May, 1954, attending such meetings as often as three or four times a month. That shortly after the petitioner had been taken into custody by the Immigration and Naturalization Service in the present proceedings, leaflets were distributed by this Committee which contained, [among other data] the following quoted paragraph:

" 'JOSE OCON—Mexican born militant worker is incarcerated on Terminal Island for about the past 40 days. The Eastside Branch of the L. A. Committee of which Ocon was an active member, is requesting of all deportees and his many friends in the community, that they send a word of greeting to Jose Ocon * * *'

"* * * That, on the basis of the information in the possession of the Immigration and Naturalization Service, the release of the petitioner under bond or otherwise would be inimical to the public interest and safety of the United States."

deportation Order against petitioner, but that the Petition herein was filed solely for the purpose of determining the legality of petitioner's detention during the pendency of a certain action in the United States District Court for the Southern District of California, Central Division, Civil No. 16964-WB, which latter action seeks declaratory relief and judicial review of said deportation order against petitioner; and it appearing to the Court that the Complaint in said civil action No. 16964-WB, attached to the Petition herein as Exhibit A, is not defective * * *

"Now, Therefore, It Is Hereby Ordered, Adjudged and Decreed that the Petition for Writ of Habeas Corpus filed herein be denied; that the Order to Show Cause heretofore issued on the 20th day of September, 1954, be discharged; and that respondents have costs against the petitioner. Costs taxed at $20.00."

In reading Mr. Justice Black's dissent in the Carlson case, supra, it becomes apparent that he felt the impact of the jailing of a person who had not even been charged with a crime. We feel it too, but the bald word statement of that fact does not tell the story at all. Underlying the very unpleasant duty we are met with in this proceeding is our government's resistance to as venal an attack on its very existence as the long story of "man's inhumanity to man" reveals. The Congress enacted laws which, in the judgment of the Congress, were necessary and to some extent would be effective as defensive action. The highest court has validated them. It is said in Carlson v. Landon, 1952, 342 U.S. 524, 534, 72 S.Ct. 525, 531, 96 L.Ed. 547, "So long, however, as aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what nonciti-

zens shall be permitted to remain within our borders." It is alleged in the charges of the Immigration Service that Ocon violated the laws above referred to. Upon the charges being formally made, the official in immediate charge of their enforcement has acted. Ocon has appealed to the courts of the land to stay the official's hand and the courts have and are listening to the reasons for this request. Yet, in this proceeding, we do not find Ocon denying the charges. In this proceeding Ocon does not deny that he is an alien and that he was or is or at any time has been after entry a member of the Communist Party of the United States:—The facts which make his presence in the United States illegal. He resists the deportation, not because he is one who has a right to stay in this country, but because, as he asserts, there were flaws in the way those crucial decisive facts were officially established. Of course, he has a right to the courts' services to establish whether there was due process in the official establishment of the facts against him, but since he does not meet the courts' service with a frank statement of the truth which he, best of all others, knows, his interim custody after continued and undenied Communist activity puts a different light upon the bald statement made at the opening of this paragraph. See U. S. ex rel. Bilokumsky v. Tod, 263 U.S. 149 at pages 154–155, 44 S.Ct. 54, 68 L.Ed. 221.

The final determination of the review and declaratory action now pending should be advanced over ordinary litigation and this court should and will cooperate to that desired end.

 In our opinion, the district court was not in error in ruling that the deprival of Ocon of his liberty, during the pendency of the district court action to test the regularity of the procedure which resulted in his being ordered deported, is valid.[6]

Affirmed.

6. No statement in this opinion shall be taken to prejudice the presentation of any view of the law or fact relevant in the review and declaratory action. And, of course, the rendering of the decision on this motion for release on bail does not foreclose the respondent (Attorney General) from future action as to bail.