In the Matter of Vasilios **KORDOPATIS**,

v.

**L. W. HURNEY.**

No. 66 C 520.

United States District Court
N. D. Illinois, E. D.

March 31, 1966.

Melvyn E. Stein, O'Harra & Stein, Chicago, Ill., for plaintiff.

Edward V. Hanrahan, U. S. Atty., for defendant.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

Petition for issuance of a writ of habeas corpus.

This petition for issuance of a writ of habeas corpus is brought by a 26 year old Greek citizen, a deserting crewman of a Greek vessel, who is presently confined in the Cook County Jail, Chicago, Illinois, without bail, awaiting deportation, or, in the event of a favorable appeal, voluntary departure. Relief in the form of release on bail pending review is sought.

Deportation proceedings were instituted against petitioner on March 8, 1966, after his arrest for remaining in the United States for a period longer than that permitted by law. After a hearing, the Special Inquiry Officer of the Chicago Office of The Immigration and Naturalization Service, denied petitioner's application for voluntary departure and ordered the petitioner deported pursuant to Section 241(a) (2) of the Immigration and Nationality Act. The District Director thereupon ordered that the petitioner be held in custody of the Service without bond pursuant to the provisions of 8 C.F.R. 242.2. An appeal of said bail denial was dismissed by the Board of Immigration Appeals on March 18, 1966, prompting the instant action for release pending review on the merits.

Section 242(a) of the Immigration and Nationality Act (Sec. 1252(a), Title 8, U.S.C.) expressly provides for habeas corpus relief with regard to release on bond only "upon a conclusive showing * * * that the Attorney General is not proceeding with reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability."

It is clear that petitioner has not made any such allegation or showing thereon, as, indeed, he could not. The record reveals that the petitioner was granted a hearing on deportability the day after he was taken into custody, and that said hearing was continued for a week on petitioner's own request. Immediately thereafter, on March 18, 1966, he was ordered deported, from which order he reserved appeal. Respondent has clearly acted with "reasonable," if not exceptional, dispatch in this matter, and no relief can lie under the aforesaid express terms of Section 242(a).

■ Contrary to the contentions of respondent, however, we adhere to the view advanced in United States ex rel. Yaris v. Esperdy, (2d Cir.) 202 F.2d 109, and United States ex rel. Belfrage v. Shaughnessy, (2d Cir., 1954), 212 F.2d 128, and hold the enactment of Section 242(a) of the 1952 Act was not intended to restrict the power of judicial review existing theretofore, Yanish v. Barber, 73 S.Ct. 1105, 97 L.Ed. 1637 (1953). That is, in the opinion of this Court, we have the power to admit the petitioner to bail pending appeal on the deportation order on "a clear and convincing showing that the decision against him was without a reasonable foundation." United States ex rel. Potash v. District Director, (2d Cir.,) 169 F.2d 747, 751. As stated in Yaris, supra, by Judge Chase of the Second Circuit Court of Appeals, affirming a decision of Judge Irving Kaufman, then of the Southern District of New York:

"In the absence of clear language to the contrary, we cannot construe the statute to give the Attorney General unbridled license to exercise his discretion as to detention in whatever arbitrary or capricious way he might see fit, provided only that he act with reasonable dispatch to obtain a decision as to the alien's deportability. On the contrary, we think his discretion as to keeping an alien in custody is judicially reviewable to the same extent as it was before. Section 242 provides but an added statutory recognition of a basis for judicial review, not a limitation upon the power

as it had existed." 202 F.2d 109 at page 112.

■ Having established our jurisdiction to review the denial of bail, however, we must conclude that the record does not support plaintiff's assertions.

It is apparent, initially, that the problem of deserting crewmen is a serious one which has been given special treatment by Congress (See Sections 1282(a), (b), (c), 1284(a), (b), and 1287, Title 8, U.S.C.) and which must be handled strictly by the District Director. Further, some weight must be given to the fact that during the year ending June 30, 1964, 1,131 Greek crewmen deserted their carriers at United States air and sea ports, almost three times the number of the next highest country, China, which had 426, and nearly a third of the total, 3,615. See Annual Report of the Immigration and Naturalization Service, U.S. Govt. Printing Office, (1964), at page 78.

In addition to the above factors, the respondent Director considered a number of other circumstances when refusing to grant release to the petitioner on bail:

1) Petitioner was, without question, illegally present in this Country, and was therefore subject to deportation, or at least, voluntary departure if appeal was successful;

2) Investigation conducted by the Immigration and Naturalization Service at Philadelphia, Pa., and Chicago, Ill., and a sworn statement made by petitioner on March 7, 1966, revealed that petitioner intended to desert his ship and remain in the United States even before he left his vessel on March 4, 1966;

3) Petitioner was apprehended while hiding behind a door in his cousin's apartment to escape capture, a practice he apparently followed whenever anyone knocked at the door; and

4) Petitioner's cousin lied to Immigration officials about his whereabouts, and sought to hide him from their view.

From these factors, the District Director concluded that petitioner was unlikely to appear for further proceedings were he released on bond. We cannot state as a matter of law that such decision was unreasonable, unconscionable, capricious, or without justification, as petitioner contends.

■ The Attorney General's (in this case, the District Director, pursuant to 8 C.F.R. 242.2) exercise of discretion is presumptively correct except for abuse thereof, and where it is shown that such exercise was without reasonable foundation. Carlson v. Landon, 343 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), rehrg. den. 343 U.S. 988, 72 S.Ct. 1069, 96 L.Ed. 1375; United States ex rel. Potash v. District Director, supra. This Court is satisfied that the factors outlined above were properly considered by respondent, and that the petitioner has failed to clearly and convincingly overturn the aforesaid presumption and demonstrate that her decision was without a reasonable foundation. See United States ex rel. Rowoldt v. Schrode, (D.C.Minn., 1952) 103 F.Supp. 752, 753, rev'd on other grounds, Rowoldt v. Perfetto, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed.2d 140; United States ex rel. Mc Quillan v. Delany, (D.C.La., 1950) 94 F.Supp. 184, 186; United States ex rel. DeGeronimi v. Shaughnessy, (2d Cir., 1951) 187 F.2d 896.

The cases relied on by petitioner are all clearly distinguishable on their facts: Rubinstein v. Brownell, (1953) 92 U.S. App. D.C. 328, 206 F.2d 449 (no suggestion of flight); United States ex rel. Klig v. Shaughnessy, (D.C.N.Y., 1950) 94 F.Supp. 157 (Petitioners were married to citizens, and were long time residents of U.S.); Hernandez-Avila v. Boyd, (9th Cir., 1961) 294 F.2d 373 (Petitioner was once naturalized); United States ex rel. Pirinsky v. Shaughnessy, (2d Cir., 1948) 177 F.2d 708 (Petitioner married a U.S. citizen, had an infant son, and had resided here for 26 years).

Accordingly, the petition for issuance of a writ of habeas corpus and release on bond is denied.