REYNOLDS, Immigration Inspector, et al. v.
UNITED STATES ex rel. DEAN.
No. 4991.

Circuit Court of Appeals, Seventh Circuit.
Jan. 6, 1934.

James R. Fleming, of Portland, Ind., George L. Rulison, of South Bend, Ind., and William B. Duff, of Lagrange, Ind., for appellants.

Edwin W. Hunter and George Farage, both of South Bend, Ind., for appellee.

Before SPARKS, FITZHENRY, and PAGE, Circuit Judges.

PAGE, Circuit Judge.

The alien, Mohamed Mahfood, was charged under section 155, Tit. 8, USCA, which provides that "any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; any alien who manages or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists any prostitute or protects or promises to protect from arrest any prostitute; * .* *" shall be deported, etc.

 While alien was being held under the warrant of deportation, a petition for writ of habeas corpus was filed in the District Court of the United States for the Northern District of Indiana, South Bend Division. That court discharged alien on the ground that he had not had a fair hearing, because the inspector acted as investigator, prosecutor, witness, and judge, a practice that seems to be sanctioned by the law and the regulations of the Department of Labor.

All the formal requirements of the law were complied with. Upon the hearing before the inspector, alien was represented by two counsel, and witnesses were examined and cross-examined by them. At many places in the record of the hearing appear the statement "Attorneys object," but nowhere is there stated any specific grounds for objection. The same counsel appearing here point out acts by the investigator that are claimed to be unfair and prejudicial to alien.

It is said that the inspector inserted a note to the effect that the police records show that Lizzie Dean, whose place it is charged was a house of prostitution with which alien had connection in violation of section 155, supra, had been convicted on the charge of keeping a house of prostitution, that no support is found for that charge in the record, but that, on the contrary, Lizzie Dean, who gave the only testimony on that point, made denial thereof. Her testimony is at places inconsistent and evasive, but the record shows the following testimony by her: "It is not true that I have been arrested for keeping a house of ill-fame at least four times. The records of the Court do not show three times. Twice they got me only twice I was pinched." In the face of this it cannot be said that the statement charged to the investigator was to any substantial degree prejudicial or unfair to alien. There was much evidence in the record that Lizzie Dean's place was a house of prostitution, and that alien was connected therewith.

The following instances are pointed out as evidence of unfair conduct on the part of the inspector: W. E. Bracken, a deputy sheriff, testified for alien. On cross-examination by the inspector, he was told: "For your information I am going to testify in a few minutes that I have seen such a rush of business there that the girls have had to wait their turn to get a room. * * * Explain that fact." The answer: "Well, the only way I can explain it is that they haven't been raided. That's all. The fact of the matter is the houses of prostitution in my end of the county haven't much trouble."

The suggestion did not seem to have intimidated this officer of the law, but brought out the fact from him that houses of prostitution in his end of the county did not have much trouble with officers of the law or any one else. The same character of observation was later made to the same witness, but did not bring out any testimony unfavorable to alien.

One Snook was called as a character witness. He testified that if the Dean place had been a house of prostitution he would have known it. He then disclosed that he lived in a house on the Dunes Highway, but did not

remember that it was formerly occupied by one George Gage. Probably to test his recollection, the inspector said: "For your information, that house \* \* \* owned by yourself, is the place which operated as a house of prostitution and which I, myself, assisted the sheriff who apprehended George Gage and some girls there, and they plead guilty to the charge of prostitution. Do you remember the circumstances?" Witness' answer was: "I believe I remember something of that kind, yes." It does not seem that that could have been injurious to alien.

Some similar observations were made to alien's witness Sue Carter. It is not conceivable that alien was prejudiced thereby. The testimony of that witness is so contradictory that it is difficult to get a clear idea of what she did mean. The evidence indicates that she was an inmate of a house of prostitution and was there plying her trade.

It is complained that Inspector Goodall told one of the witnesses that she need not testify if she did not want to. He did say that, and at the same time said that applied also to questions by the government. Counsel for alien told witnesses the same thing. The suggestion was not harmful.

Some other matters are complained of; but it would be a great stretch of the imagination to assume that any harm could or did come therefrom to the alien. The contentions to effect that the practice, pursuant to the regulations, is unfair, are met by the court in Bilokumsky v. Tod, 263 U. S. 149, 157, 44 S. Ct. 54, 57, 68 L. Ed. 221: "Moreover, a hearing granted does not cease to be fair, merely because rules of evidence and of procedure applicable in judicial proceedings have not been strictly followed by the executive; or because some evidence has been improperly rejected or received. Tang Tun v. Edsell, 223 U. S. 673, 681, 32 S. Ct. 359, 56 L. Ed. 606. To render a hearing unfair the defect, or the practice complained of, must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process."

Upon the main charge forming the basis of the inquiry, the preponderance of the evidence shows (a) that to the public, many of whom were inquired of by the inspector, Lizzie Dean's place had a reputation as a house of prostitution; (b) that girls were in the house for the purpose of prostitution, and were there plying their trade for money, not only to the knowledge of Lizzie Dean but to the knowledge of alien; (c) that alien lived in the house, and there is some evidence to show that he roomed with the Dean woman, and that they passed with some as husband and wife; (d) that alien not only knew of the character of the house, but that he cooperated by sending men to the girls' rooms for the purpose for which the house was being kept by Lizzie Dean; (e) that alien at one time owned or at least had title to the house in his name, and in the real estate transaction and in connection with the business had furnished Lizzie Dean with a considerable sum of money, for a portion of which she was, at the time of the hearing, still indebted to him; (f) that the place owned by Lizzie Dean or owned and operated by the two together was several times raided and the persons convicted for violating the National Prohibition Act (27 USCA); (g) that the alien had been without any occupation or means of support other than his connection with the house of Lizzie Dean for the last three years; (h) that though alien had been in this country twenty years or more, and had taken out his first papers, he says he was refused citizenship because convicted of violation of liquor laws.

Alien had raised a considerable family in this country by a wife who was born in his own country. He sent her and his family back to Syria, where they ever since have lived, while he has lived in this country. In addition to rearing a considerable family from the proceeds of his work as a laboring man, he also accumulated, and had in 1929, $6,000 or $7,000.

While these facts would not support a case unsupported by other substantial evidence, yet under all the circumstances shown here they are suggestive of the possibility that a part of his property had been earned by easier and more lucrative ways than performing day labor. And, while we do not think that the practice of having the inspector act as judge, investigator, prosecutor, and witness is by any means ideal, yet, in the absence of any showing from which it can be inferred in this case that alien was prejudiced, we are of the opinion that the alien had a fair hearing, was guilty of the violations of the statute charged, and that he ought not to have been discharged upon the hearing in the District Court.

For these reasons the order of discharge in the District Court is reversed, and the case is remanded to that court with direction to enter an order in harmony with these findings and conclusions, and that that court shall remand the alien to the custody from which he was taken.