### HAYS v. ZAHARIADES. *
#### No. 10842.

Circuit Court of Appeals, Eighth Circuit.
May 25, 1937.

*Rehearing denied June 21, 1937.

William B. Danforth, Asst. U. S. Atty., of Mason City, Iowa (Edward G. Dunn, U. S. Atty. of Mason City, Iowa, on the brief), for appellant.

L. R. Boomhower, of Mason City, Iowa, for appellee.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order and judgment sustaining a writ of habeas corpus at the instance of appellee, John Zahariades. Appellant is Divisional Director of Immigration and Naturalization.

John Zahariades, a citizen of Greece, was a resident alien who had been admitted to the United States in 1910. During practically all the time since his admission, he has been engaged in the restaurant business at Mason City, Iowa, where he is the owner of a substantial two-story brick building, in the first story of which he has operated a restaurant, and in the second story of which is a rooming house. He was arrested by Immigration Inspector Carl B. Nelson on August 15, 1935, following which such proceedings were had that he was found guilty of being connected with the management of a house of prostitution, and on June 26, 1936, a warrant of deportation was issued by the Assistant Secretary of Labor. Thereafter, on petition the lower court issued a writ of habeas corpus, and after a return thereto and answer to the petition, and on full hearing, the court ordered petitioner's discharge on the ground that he had not had a fair hearing. This holding is challenged on this appeal.

To avoid confusion, the parties will be referred to as they appeared in the lower court, the appellee being there designated as petitioner and the appellant as respondent.

On August 15, 1935, the petitioner was arrested upon a warrant issued by the Secretary of Labor on the charge that he was an alien connected with the management of a house of prostitution. He was then accorded hearings by the Inspector on the charges against him. These hearings were held at Mason City, Iowa, on August 15, 1935, on August 29, 1935, and on December 19, 1935. At the hearing on August 15, 1935, he was informed that the purpose of the hearing was to afford him an opportunity to show cause why he should not be deported. The warrant of arrest was read to him, and he was given an opportunity of inspecting it. He was advised that he had the right to be represented by counsel, and in response he stated that L. R. Boomhower, Esquire, who was then present, would so represent him. The Inspector then inquired of Mr. Boomhower if he was ready to proceed with the hearing, whereupon counsel asked for a continuance so that he might become acquainted with the case. The continuance was granted, and the hearing was resumed on August 29, 1935.

At the hearing on August 29, 1935, the Inspector produced copies of affidavits made by various parties and designated as Exhibits A, B, C, D, E, F, G, H, I, and J, stating to petitioner and his counsel that, "I hand you herewith all the evidence upon which the warrant of arrest in your case is based, consisting of and designated as follows," etc. The petitioner and his counsel were advised that these affidavits were attached to and made a part of the application for warrant of deportation, and that they would be considered by the Secretary of Labor, together with the record of the hearing, in reaching a decision. The exhibits were ex parte affidavits, taken previously by the Immigration Inspector as a basis for making application for the warrant of arrest. Exhibit A was an affidavit made by the petitioner, and the others were affidavits made by various named parties. Counsel for petitioner objected to each of these exhibits, with the exception of Exhibit A, and the exception was entered on the record. The Immigration Inspector then produced in turn each of the witnesses making the affidavits, with the exception of one who was called at a later hearing, handed him a copy of the statement and asked him if he had signed it, and if it were true and correct. In each instance, except one hereafter noted, the witness answered in the affirmative. The witness Tom Lappis who had made one of the affidavits replied that he wished to change his statement in certain particulars, and was permitted so to do. Each witness, after he stated under oath that the affidavit previously signed by him was true and correct, was then cross-examined by counsel for the petitioner.

On cross-examination, the witness Tom Lappis repudiated very substantial and material parts of his statement. At this hearing petitioner called three witnesses and took the stand in his own behalf. At the close of the hearing counsel for petitioner demanded that the witness making the affidavit designed as Exhibit C be also produced for cross-examination, and accordingly at a later date, December 19, 1935, this witness was produced. She was shown copy of the affidavit which she had signed, stated that she had signed it, and that it was true and correct. She was then cross-examined by counsel for petitioner, so that all of the witnesses making the ex parte affidavits appeared at the hearings, stated under oath in the presence of petitioner and his counsel, that the statements contained in the affidavit were true and correct, and were fully cross-examined by counsel for petitioner. At this last hearing petitioner was given the opportunity of introducing any further evidence he might desire, but he answered, through his counsel, that he had nothing further to offer. It was on the record so made that the Immigration Inspector recommended the deportation of petitioner and upon which deportation warrant was issued on June 26, 1936, by the Assistant Secretary of Labor.

The statute under authority of which deportation was ordered is section 155, title 8, U.S.C.A., which, among other things, provides as follows: " * * * any alien who shall be found an inmate of or connected with the management of a house of prostitution * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

██ The charge of unfairness of the hearing urged in the lower court and relied upon here is bottomed on the claim that substantially all of the testimony in behalf of the government was ex parte, taken in secret in advance of the hearing, and at the time of the hearing produced only by copy. The determination of the propriety of deportation is not a prosecution for a crime, but the proceedings are civil in their nature, and hence, the strict rules governing proof in criminal prosecutions do not apply, and a hearing is not necessarily unfair merely because rules of evidence and of procedure applicable to judicial proceedings have not been strictly followed. United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221. The power to expel aliens belongs, not to the judicial, but to the political department of the government. However, a fair hearing must be accorded in a proceeding for deportation, and under the rules of the Department of Labor and under the law, the alien must be notified of the charge against him. He must have an opportunity to inspect the warrant of arrest and the evidence upon which it is issued, and he must be advised of his right to be represented by counsel. United States ex rel. Vajtauer v. Commissioner, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560; Whitfield v. Hanges (C.C.A.8) 222 F. 745.

██ In this proceeding the petitioner did not claim citizenship, so that question was not involved. He was not entitled to a judicial hearing, and there is no claim that the proceedings were violative of the rules promulgated by the Secretary of Labor pursuant to law. To render a hearing of this character unfair, the practice complained of must be such as might have led to a denial of justice, or there must have been absent some element deemed essential to due process of law. It is settled by controlling authority that a hearing does not cease to be fair merely because rules of evidence and of procedure applicable in judicial proceedings have not been strictly followed, nor because some evidence has been improperly received. United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221. Neither is a want of due process established by showing that the decision is erroneous or that incompetent evidence was received and considered. United States ex rel. Tisi v. Tod, 264 U.S. 131, 44 S.Ct. 260, 261, 68 L.Ed. 590. The proceeding by habeas corpus is in the nature of a collateral attack and does not in the broad sense bring before the judicial tribunal a review of the evidence, nor indeed, of the proceedings. As said in United States ex rel. Tisi v. Tod, supra, "Denial of a fair hearing is not established by proving merely that the decision was wrong. * * * This is equally true whether the error consists in deciding wrongly that evidence introduced constituted legal evidence of the fact or in drawing a wrong inference from the evidence."

In Hays v. Sesto (C.C.A.8) 12 F.(2d) 698, 700, it was claimed that the hearing was unfair. As in the instant case, petitioner was accorded a hearing, at which his counsel appeared for the purpose of cross-examining witnesses, and he was given an opportunity to produce any evidence he desired. After the hearing was

concluded, however, certain statements were added to the evidence in the form of written statements by various individuals. This being shown, the Department granted a rehearing, and at the rehearing the petitioner was again represented by counsel. In the course of the opinion by the late Judge Kenyon it is said: "If the matter stood alone on the statements produced after the first hearing was concluded and sent on with the proceedings to the Department of Labor at Washington, the charge of an unfair hearing might well be made; but in view of the fact that all these parties making statements, with the two exceptions heretofore pointed out, were subjected to complete examination and cross-examination under oath, and the further fact that the board of review seems to have based its final opinion upon the oral evidence introduced, there is no foundation whatever for any claim that the rehearing was not a fair hearing."

In Ungar v. Seaman (C.C.A.8) 4 F. (2d) 80, 82, in an opinion by the late Judge Sanborn, the requisites of a fair hearing in proceedings of this character are summarized as follows: "Indispensable requisites of a fair hearing, according to these fundamental principles, are that the course of proceedings shall be appropriate to the case and just to the party affected; that the accused shall be notified of the nature of the charge against him in time to meet it; that he shall have such an opportunity to be heard that he may, if he chooses, cross-examine the witnesses against him; that he shall have time and opportunity, after all the evidence against him is produced and known to him, to produce evidence and witnesses to refute it; and that the decision shall be governed by and based upon the evidence at the hearing."

█ In the instant case, all these requisites to a fair hearing have been met. The petitioner was given notice of the charge against him; he was given such time as he requested to meet it; he was given an opportunity to be heard; he was confronted with every witness who gave evidence against him and given an opportunity of full cross-examination. He was given ample time and opportunity, after all the evidence was produced and known to him, to produce evidence and witnesses to refute it, and the decision was based upon the evidence produced at the hearing. Each witness, with the one exception heretofore observed, stated not only that he had signed the affidavit, but that its contents were true and correct. This he stated under oath in the presence of the petitioner and counsel, and he was then fully cross-examined with reference to everything contained in his statement. There is no contention that the copies of the statements furnished were not correct copies of the originals. True, the witness Lappis repudiated and materially modified the statement he had made, but he was fully cross-examined by counsel, and, in fact, the cross-examination in some instances went beyond a strict cross-examination and practically amounted to making the witness a witness for petitioner. We think the statements so coming into the evidence at the hearing were properly construed as substantive evidence. The witness Lappis having become a witness for petitioner, certainly the affidavit previously made by him, though repudiated, was admissible for impeachment purposes and as tending to affect the credibility of the witness and the weight to be given to his testimony.

In Ranieri v. Smith (C.C.A.7) 49 F. (2d) 537, the court was confronted with a similar situation. At the hearing preliminary statements of the witnesses were introduced as evidence and submitted to the alien and his counsel, "and lengthy and vigorous cross-examinations thereon were had on behalf of the alien." In the course of the opinion it is said: "It was held in Ex parte Hidekuni Iwata (D.C.) 219 F. 610, that evidence used to obtain a warrant against the alien was admissible at the hearing. In the case of Svarney v. United States (C.C.A.) 7 F.(2d) 515, relied upon by alien, affiant was not present, and there had been no effort to get her, and these were the reasons assigned by the court for excluding the evidence. This was quite proper because alien was deprived of his right of cross-examination. In the instant case most of the witnesses—and all of the principal witnesses—were present, and alien had stipulated a waiver of his right to cross-examine those not present. He cross-examined extensively all government witnesses present, and raised no objection at the hearing of his lack of opportunity to cross-examine those not present."

The court held that the preliminary statements of the witnesses were properly admitted in evidence and that the alien had had a fair hearing.

We conclude that the petitioner was afforded a fair hearing and that there was

substantial evidence to sustain the findings of the Secretary of Labor. The order and judgment of the lower court in discharging petitioner from detention is therefore reversed and the cause is remanded with directions to vacate the writ of habeas corpus and to take such steps as may be appropriate to remand petitioner to the custody of the proper officers of the Department of Labor for deportation according to the deportation warrant.