MARCELLO v. AHRENS.

No. 14718.

United States Court of Appeals, Fifth Circuit.

May 6, 1954.

Rehearing Denied May 25, 1954.

Wm. C. Orchard, New Orleans, La., for appellant.

M. Hepburn Many, Asst. U. S. Atty., George R. Blue, U. S. Atty., New Orleans, La., Douglas P. Lillis, Act. Dist. Counsel, Miami, for appellee.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

RUSSELL, Circuit Judge.

Carlos Marcello, a resident alien, was arrested and taken into custody by the United States Immigration Inspector at New Orleans, Louisiana, on December 30, 1952, under a warrant issued pursuant to section 242[1] of the Immigration and Nationality Act of 1952.[2] The warrant charged specifically that Marcello was subject to be deported under section 241(a)(11) of the Act[3] for the reasons set forth in the margin.[4] Pending a hearing, which was three times continued, the alien was released under bond. The hearing was held at New Orleans on February 16, 1953, at which time the alien interposed objections to further proceedings on constitutional grounds. During the course of the hearing the special inquiry officer advised the alien, through his counsel, of his right to apply for a suspension of deportation,[5] which application must be made during the hearing, according to applicable regulations.[6] Counsel stated that the alien did not wish to apply for such relief. The decision and order of the special inquiry officer, rendered February 20th, held that Marcello was deportable for the reasons stated in the warrant and ordered that he be deported from the United States in the manner provided by law.

After rendition of the decision and order of deportation, the alien filed a motion to reopen the hearing to permit him to apply for discretionary relief by suspension of deportation. This motion was denied by the special inquiry officer on the ground that "the motion failed to state any new facts to be proved at the reopened hearing." In argument before the Board of Immigration Appeals the alien renewed his claim of deprivation of constitutional process and in addition urged that his motion to reopen the hearing should be granted, "unless the Government is prepared to waive that technical objection and permit the application for suspension to be considered by the Board."

The Board of Immigration Appeals overruled the alien's objections to the

---

1. 66 Stat. 208, 8 U.S.C.A. § 1252(a).

2. 66 Stat. 166, 8 U.S.C.A. § 1101 et seq.

3. 8 U.S.C.A. § 1251(a) (11).

4. "The Immigration and Nationality Act of 1952 in that he has been convicted of the violation of a law relating to the illicit traffic in narcotic drugs, to wit: The Marijuana Act of August 2, 1937, Public Law 238, Chapter 553, 75th Congress [26 U.S.C.A. § 2590 et seq.].

"The Immigration and Nationality Act of 1952 in that he has been convicted of the violation of a law governing and controlling the taxing, sale, exchange, dispensing and giving away of marijuana, to wit: The Marijuana Act of August 2, 1937, Public Law 238, Chapter 553, 75th Congress [26 U.S.C.A. § 2590 et seq.].

5. 8 U.S.C.A. § 1254(a) (5).

6. 8 C.F.R. 242.54(d).

proceedings before the special inquiry officer and his attacks against the constitutionality of such proceedings, but accepted his proposal to consider his application for discretionary relief on the record made before the hearing officer. It conceded arguendo that the alien could establish an " 'exceptional and extremely unusual hardship' case" and his "good moral character" and that he would be able to establish all of the requirements essential to the invocation of its discretion,[7] but, for reasons [8] stated in its decision, the Board declined to grant such relief. The appeal was dismissed.

On June 2, 1953, the alien petitioned the district court for the writ of habeas corpus. The writ was issued and on June 5, 1953, a hearing was held at which time the alien offered in evidence the official record of the Immigration and Naturalization Service containing the full record of his deportation proceedings and rested without offering further evidence in support of the allegations of his petition. The district court, in an able memorandum opinion.[9] held the deportation order valid and accordingly entered judgment discharging the writ. From the order of dismissal, Marcello has taken this appeal.

There is no question but that under section 241(a)(11), supra, Marcello is subject to deportation. He does not deny that in October, 1938, he was convicted, on his plea of guilty to an indictment containing two counts, of violating the Marihuana Tax Act of 1937.[10] How-

7. Footnote 5, supra.

8. "As against any evidence that he might present, there are the record of his convictions in 1938 for two transfers of bulk marihuana, totaling 380 ounces (Ex. 4); a Federal Bureau of Investigation Report (Ex. 5) which shows that he was arrested on several occasions, that most of the charges were dismissed but that in 1930 he was sentenced to nine to fourteen years for assault and robbery for which offenses he was pardoned on July 25, 1935; clippings from newspapers published in New Orleans, Louisiana, (Ex. 7) which the respondent's own counsel submitted and which refer to the respondent as a racketeer, 'number one mobster in Louisiana,' etc.; and his refusal to testify before the Kefauver Committee.

"With respect to the latter matter, the respondent was found guilty in the District Court for the Eastern District of Louisiana on six counts of an indictment charging contempt of the United States Senate for refusing to answer certain questions before a Senate subcommittee. He had refused to answer 166 questions on the ground that the answers would tend to incriminate him, but at the trial he was found not guilty on all but six counts relating to six questions. On appeal, his conviction was reversed and a judgment of acquittal was rendered. [Marcello v. United States, 5 Cir., 196 F.2d 437]. In Mahler v. Eby, supra, [264 U.S. 32], at p. 42, [44 S.Ct. 283, 68 L.Ed. 549], the Supreme Court, in discussing

the question of what evidence would warrant the finding that an alien was an undesirable resident, clearly indicated that the refusal of an alien to answer questions was an attitude from which it might well be inferred that what would be revealed by the answers would not add to the alien's desirability as a resident. Similarly, we believe that in the respondent's case, although he was acquitted by the appellate court, his refusal to answer questions on the ground that the answers might incriminate him does not indicate that he is a desirable resident. Section 244(a) specifically provides that 'the Attorney General *may, in his discretion,* suspend deportation * * *'. It is our considered opinion that the respondent's case is not one which merits the discretionary relief of suspension of deportation and that the order of deportation entered by the Special Inquiry Officer should be approved. We will, therefore, dismiss the appeal."

9. Reported at 113 F.Supp. 22.

10. The appellant was given a general sentence of one year and one day imprisonment. He contends that since he was given a general sentence there was but one conviction, although the indictment related to two distinct transactions, therefore, the finding of the special inquiry officer that he was deportable on two grounds was unwarranted and prejudicial to him. He further submits that there is no valid law of the United States relating to "the illicit traffic in narcotic drugs", thus he could not have been,

ever, it is contended that the district court erred in discharging the writ of habeas corpus on the ground that section 242(b), supra, is violative of the Fifth Amendment to the Constitution of the United States in that it fails to meet the currently accepted standards for a fair and impartial hearing because: (1) investigative and prosecutive functions of the special inquiry officer are commingled with his adjudicative functions and (2) such officer is amenable to the supervision of the Attorney General whose responsibility it is to enforce the deportation statutes. He argues that sections 241(a)(11) and 241(d) of the Act, which authorize deportation for offenses committed prior to the effective date of the Act, are unconstitutional as *ex post facto* laws in that they imposed an additional punishment for an act greater than the law annexed to the crime when it was committed. Finally, he contends that he was entitled to a hearing on his application for discretionary relief which was denied him.

As we understand appellant's argument, he urges that the proceedings prescribed by section 242(b) are subject to, but not in conformity with, the Administrative Procedure Act,[11] or, if not subject to the requirements of that Act, then section 242(b) is violative of the Due Process Clause of the Fifth Amendment, since the Administrative Procedure Act establishes the "currently accepted standards of fairness and impartiality" necessary to constitute due process of law in administrative hearings. Clearly the procedure prescribed by section 242(b) does not accord with section 5(c)[12] of the Administrative Procedure Act, and we shall consider first the contention that in all respects the requirements of the Administrative Procedure Act are controlling.

It is not necessary for decision in this case to consider the broad proposition of whether deportation proceedings are subject to requirements of the Administrative Procedure Act[13] as concerns matters not expressly provided by the Immigration Statute. Our investigation is limited to a determination of whether the proceedings provided for by section 242 (b), which were followed in this case, are invalid because contrary to that Act. Prior to the enactment of the Immigration and Nationality Act of 1952, there was no express provision in the immigration law requiring that a hearing be granted a deportee. Such matters were left largely to be administered under regulations promulgated by the Attorney General. However, under the decisions of the Supreme Court,[14] the requirement for a fair hearing was necessarily implicit in the deportation statutes and such hearing was required to conform to the Administrative Procedure Act. Following the decision of the Supreme Court in the Sung case, Congress, by a rider to the supplemental appropriations bill enacted in September, 1950,[15] exempted "Proceedings under law relating to the exclusion or expulsion of aliens" from the provisions of sections 5, 7 and 8 of the Administrative Procedure Act. This rider was repealed by the Immigration and Nationality Act of 1952, which specifically prescribed the procedure to be followed in deportation cases in sec-

---

and was not, convicted of such an offense. Inasmuch as he was convicted of the "violation of [a] law or regulation governing or controlling the taxing", et cetera, of marihuana, which is a deportable offense under the statute, as charged in the warrant, admitted at the hearing and found by the hearing officer, we deem it unnecessary to this opinion to resolve these issues.

11. 5 U.S.C.A. § 1001 et seq.

12. 5 U.S.C.A. § 1004(c).

13. See Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; Rubinstein v. Brownell, 92 U.S.App.D.C. 328, 206 F.2d 449, affirmed by an equally divided court, 346 U.S. 929, 74 S.Ct. 319.

14. Notably Kaoru Yamataya v. Fisher (The Japanese Immigrant case), 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721, and Wong Yang Sung v. McGrath, supra.

15. 64 Stat. 1048.

tion 242(b) thereof with a further provision that:

"The procedure so prescribed shall be the sole and exclusive procedure for determining the deportability of an alien under this section."

Appellant relies upon the decision in the Sung case to support his contention that deportation proceedings are amenable to the requirements of the Administrative Procedure Act. However, at the time Sung was ordered deported Congress had prescribed no procedure to govern deportation proceedings. In the absence of such legislation the Supreme Court held that the hearing to which Sung was entitled under its prior decisions must conform to the Administrative Procedure Act. Since that time Congress has provided a "sole and exclusive" procedure for determining the deportability of an alien, and therefore, the Sung case is no longer applicable. The case of Rubinstein v. Brownell, footnote 13, supra, has no application here. It holds merely that a deportation order issued pursuant to the Immigration and Nationality Act of 1952 is subject to judical review under section 10 of the Administrative Procedure Act.

In view of the plain language of the Immigration Statute, it is difficult to follow appellant's argument that the Administrative Procedure Act has the effect of nullifying the subsequent Act of Congress. He admits that section 242(b) reveals "an unmistakable attempt by Congress to exempt immigration proceedings" from the Administrative Procedure Act, but contends that it has failed to do so. The force of appellant's argument is that by some means the Administrative Procedure Act has the standing of a Constitutional Amendment and Congress is powerless to provide for administrative hearings which do not conform to it. Of course, there is no validity to such an argument.

■■■ Section 7(a) of the Administrative Procedure Act, 5 U.S.C.A. § 1006 (a), exempts from the purview of that Act "specified classes of proceedings

* * * specially provided for by or designated pursuant to statute." We are persuaded that this exemption is applicable to hearings held under section 242 (b). Furthermore, and controlling here, even in the absence of such provision, it was within the power of Congress to exempt such proceedings as those under review from the requirements of its creature, the Administrative Procedure Act. It is fundamental that a prior statute must yield to a subsequent valid act of Congress, insofar as the statutes are repugnant. We hold, therefore, that to the extent the proceedings prescribed by section 242(b) are inconsistent with the Administrative Procedure Act, the requirements of the latter Act are inapplicable to the deportation proceedings.

■■■ It is beyond question that an alien has no absolute right to remain in the United States. Congress has plenary power over aliens and may deport them from this country at any time for any reason, even on grounds nonexistent at the time of their entry. "Otherwise, when an alien once legally became a denizen of this country he could not be deported for any reason of which he had not been forewarned at the time of entry." Carlson v. Landon, 342 U.S. 524, 536, 72 S.Ct. 525, 532, 96 L.Ed. 547. Permissible grounds of deportation of aliens is a matter, where not controlled by treaty, alone for Congressional determination, and controlled only by legislative considerations of international polity and comity. This power of deportation, as stated in a masterly discussion by Mr. Justice Jackson in delivering the opinion of the Court, is "a weapon of defense and reprisal confirmed by international law as a power inherent in every sovereign state." Harisiades v. Shaughnessy, 342 U.S. 580, 587 and see note 14, page 588, 72 S.Ct. 512, 518, 96 L.Ed. 586. As to the grounds or causes for deportation, the courts are not empowered to substitute their opinion for that of Congress and can properly determine only whether the existence of any prescribed ground of deportation has been fairly established. Thus an alien is not without rights for

the due process clause of the Fifth Amendment is available protection for alien and citizen alike. A resident alien, subject to expulsion and deportation under conditions which Congress may prescribe, may not be deprived of his constitutional right to procedural due process. Kwong Hai Chew v. Colding, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576. This includes the right to a fair hearing "before a tribunal which meets at least currently prevailing standards of impartiality." Wong Yang Sung v. McGrath, supra [339 U.S. 33, 70 S.Ct. 454]. Appellant insists, however, that the procedure provided for in section 242(b) falls short of the current conception of fairness and impartiality and in operation constitutes a deprivation of procedural due process for the reasons above indicated.

▆▆▆ With respect to the contention that deportation proceedings must be measured by and equated to the Administrative Procedure Act we think it sufficient to say that we agree with the district court that the Administrative Procedure Act is not the sole criterion of due process of law. In reference to that Act, the Supreme Court, in United States v. Morton Salt Company, 338 U.S. 632, 644, 70 S.Ct. 357, 364, 94 L.Ed. 401, observed that "It created safeguards even narrower than the constitutional ones, against arbitrary official encroachment on private rights." While that case is not directly in point, we think that the observation is applicable here.

▆▆▆ The reference which we have made to the "prosecutive" functions of the special inquiry officer [16] relate to his duties which partake of the nature of prosecution. Under the terms of the statute it is his duty to conduct the proceedings, administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and, as authorized by the Attorney General, to make determinations, including orders of deportation. No special inquiry officer is authorized to conduct a proceeding in any case in which he has participated in investigative functions, or except to the extent stated above, in prosecuting functions. Thus, a special inquiry officer is prohibited from sitting as arbitor in a case which he was responsible for investigating and his prosecutive functions are restricted to those enumerated. Furthermore, as additional assurance that the alien shall be accorded a fair hearing, determination of deportability in each case can rest only upon the record made before the special inquiry officer and shall not then be valid unless it is based upon reasonable, substantial and probative evidence. In addition to these safeguards, the alien must be given notice of the nature of the charges against him and the time and place where the proceedings are to be held; a reasonable opportunity to be present and to be represented by counsel; an opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government.

▆▆▆ A hearing in a deportation proceeding is not unfair merely because the rules of evidence and procedure applicable to judicial hearings are not adhered to. To render such a hearing unfair the defects complained of must be such as to lead to a denial of justice. We find no such defect here.[17] Appellant

---

16. "The term 'special inquiry officer' means any immigration officer who the Attorney General deems specially qualified to conduct specified classes of proceedings, in whole or in part, required by this chapter to be conducted by or before a special inquiry officer and who is designated and selected by the Attorney General, individually or by regulation, to conduct such proceedings. Such special inquiry officer shall be subject to such supervision and shall perform such duties, not inconsistent with this chapter, as the Attorney General shall prescribe." 8 U.S.C.A. § 1101(b) (4).

17. United States ex rel. Harisiades v. Shaughnessy, 2 Cir., 187 F.2d 137, 141, and cases cited, affirmed 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586; Belizaro v. Zimmerman, 3 Cir., 200 F.2d 282; Kielema v. Crossman, 5 Cir., 103 F.2d 292; Hays v. Hatges, 8 Cir., 94 F.2d 67; Hays

does not deny that the requirements of the statute were complied with. He contends merely that under the prescribed procedure the administrative or executive officers are in a position to abuse their discretion or to be wrongfully influenced by matters outside the record. It is the deprivation of due process of law which is prohibited by the Fifth Amendment, not the opportunity to abuse due process. We are not at liberty to assume that the officers who are entrusted with the duty of administering the law will violate their trust or their statutory duty. In the event of such breach of duty, the alien will be fully protected by judicial process. See United States ex rel. Accardi v. Shaughnessy, decided March 15, 1954, 347 U.S. 260, 74 S.Ct. 499.

 In his petition, appellant urged that on the day of his arrest the Attorney General announced in a public statement that "your petitioner was an undesirable citizen (sic) and had been guilty of many crimes, and that the proceedings were specially designed to deport petitioner" and that such publicity "was bound to have great effect upon the special inquiry officer." It was also alleged that "the petitioner is further informed and believes that the Attorney General sometime in 1952 prepared a list of 152 persons whom he desired to deport, and that your petitioner's name was included on this list." These allegations were made in support of appellant's claim that he was prejudiced by reason of the special inquiry officer being subject to the supervision of the Attorney General and was thereby deprived of a fair hearing. Although given an opportunity

to do so, appellant made no attempt to substantiate these allegations. There is no evidence in the record that the Attorney General prepared a list of aliens whom he desired to deport or, of course, that appellant's name was among those listed. Likewise, the record is silent as to the alleged statement made by the Attorney General, except for six newspaper clippings which were exhibited at the deportation hearing in some of which the statement attributed to the Attorney General was reported. These clippings evidence only that there was unfavorable publicity concerning appellant's arrest and do not constitute evidence of the facts stated therein. Nevertheless, assuming that the Attorney General did make such a statement, in this case it could hardly be said to have prejudiced appellant or to have influenced the special inquiry officer's determination of deportability. This is not a case where closely contested factual issues were presented for determination. Appellant admitted that in 1938 he was convicted of violating the Marihuana Tax Act of 1937, therefore, his deportability under section 241(a)(11) was established as a matter of law.

 The contention that the provisions of section 241 [18] are unconstitutional, null and void because they are *ex post facto* laws, violative of the provisions of Article 1, Section 9, Clause 3 of the Constitution of the United States, requires little discussion. It is too well established to admit of controversy that acts of Congress governing deportation are not subject to the constitutional prohibition against the passage of *ex post*

v. Zahariades, 8 Cir., 90 F.2d 3; Reynolds v. United States ex rel. Dean, 7 Cir., 68 F.2d 346; Palmer v. Ultimo, 7 Cir., 69 F.2d 1.

18. Section 241(a) (11), 8 U.S.C.A. § 1251 (a) (11), provides that any alien who "is, or hereafter at any time after entry has been * * * convicted", et cetera, shall be deported upon order of the Attorney General. Section 241(d), 8 U.S. C.A. § 1251(d), provides that with ex-

ceptions not pertinent here the provisions of the statute are applicable to all aliens belonging to any of classes enumerated in subsection (a) notwithstanding "(1) that any such alien entered the United States prior to June 27, 1952, or (2) that the facts, by reason of which any such alien belongs to any of the classes enumerated in subsection (a) of this section, occurred prior to June 27, 1952."

*facto* laws.[19] Appellant suggests that the Supreme Court, given another opportunity to review its prior decisions, might reach a different result. However, those decisions are binding upon us and, even if we were disposed to do so, which we are not, we have no power to overrule them.

■ This leaves for consideration appellant's contention that he was arbitrarily denied a hearing on his application for a suspension of deportation. The district court did not expressly rule on this issue, however, it is properly before us for decision. We have hereinbefore related the circumstances under which this application was belatedly filed, denied by the special inquiry officer and renewed before the Board of Immigration Appeals. Aside from the fact that the application was not timely filed, see United States ex rel. McKenzie v. Savoretti, 5 Cir., 200 F.2d 546, by expressing his willingness to have the application considered by the Board without reopening the hearing, appellant waived his objections to the overruling of his motions to reopen the hearing. Furthermore, upon considering the application as having been made before it, the Board viewed it as though appellant could have proved all of the facts alleged therein and treated it for all purposes as a valid application for discretionary relief.

Appellant, apparently recognizing that he is hard pressed to show that he was prejudiced by the ruling of the special inquiry officer in view of his waiver, urges that the reasons given by the Board for denying discretionary relief are unsound. It is noted that this point was not raised by the petition in the trial court and that it is not even alleged here that the Board abused its discretion or failed to exercise it. Caddeo v. McGranery, 92 U.S.App.D.C. 19, 202 F.2d

807. The Board did not take "it upon themselves to decide that the appellant could not establish good character", as stated by appellant. Upon his express waiver of further hearing, the Board, considering the facts disclosed by the record, exercised its discretion and determined that the order of deportation should not be suspended.

■ It was not improper for the Board to consider appellant's prior convictions, his numerous arrests and his refusal to give testimony before a Senate Investigating Committee in the exercise of its discretion to deny his application. Although only three of his arrests resulted in convictions and, upon a holding that he was not criminally liable for refusing to testify before the Senate Committee, one of these was reversed [20] and he received a full pardon from another, the Board was not precluded from considering these factors in reaching its conclusion.

■ It is urged by appellant that this court should consider the recent decision of the Supreme Court in Accardi v. Shaughnessy, supra, in arriving at a decision in this case. We find nothing in that opinion inconsistent with what we have held here. The court there held that when a measure of discretion is delegated to a subordinate officer or board, a petition alleging that such discretion was not exercised, or that the decision of such body was dictated by a higher authority, states a cause for relief and the petitioner is entitled to a hearing on that issue. In the present case appellant was given an opportunity to establish the allegations of his petition and made no effort to do so. In this situation he cannot be heard to complain.

The judgment of the district court is affirmed.

Judgment affirmed.

19. Harisiades v. Shaughnessy, 342 U.S. 580, 594, 72 S.Ct. 512, 96 L.Ed. 586; United States ex rel. Eichenlaub v. Shaughnessy, 338 U.S. 521, 529, 70 S.Ct. 329, 94 L.Ed. 307; Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549; Bugajewitz v. Adams, 228 U.S. 585, 33 S.Ct. 607, 57 L.Ed. 978. See also Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547.

20. Marcello v. United States, 5 Cir., 196 F.2d 437.