**Petition of Nicholas PAZAKOS for the review of certain proceedings against Edward J. Shaughnessy, as District Director of Immigration and Naturalization for the District of New York, Respondent-Defendant, to stay an order of deportation, etc.**

Civ. 103–302.

United States District Court
S. D. New York.

Dec. 6, 1955.

Joseph J. Davidson, for petitioner.

Paul W. Williams, U. S. Atty., for the Southern District of New York, New York City, for respondent-defendant.

Nicholas Tsoucalas, Asst. U. S. Atty., and Roy Babitt, New York City, of counsel, for Immigration and Naturalization Service.

HERLANDS, District Judge.

Petitioner, Nicholas Pazakos, seeks a preliminary injunction and judicial review of administrative proceedings that have concluded in an order for his deportation. The petition (paragraphs "3 [a]," "12") alleges that the order, as adopted by the Board of Immigration

Appeals, was illegal and erroneous in that there was no "legal substantial evidence" on the record as a whole to support such order. The Government has cross-moved for summary judgment on the ground that no issue of material fact exists, and that respondent is entitled to judgment as a matter of law.

The petitioner specifically attacks the following two crucial findings of fact made by the administrative authorities: (1) that petitioner had not remained in the United States continuously since March 16, 1922; that petitioner was the same person who last entered the United States on October 20, 1929 as a member of the crew of the SS "Edison," at which time he was admitted as an alien seaman for a temporary period of sixty days; and that he was later reported as a deserter from the vessel; and (2) that petitioner's marriage to Molly Cohen, a naturalized United States citizen, on January 11, 1943, was bigamous, in that petitioner had been married on January 26, 1923, to a Greek woman, Eugenia Pazakos, and that he was the father of Eugenia's two children at the time of his marriage to Molly Cohen.

The significance of the above findings of fact is twofold. First, petitioner has initiated registry proceedings under 8 U.S.C.A. § 1259. One of the requisites under that section is that the alien shall have entered the United States prior to July 1, 1924. Secondly, the Board of Immigration Appeals concluded that, as petitioner's marriage to Molly Cohen had been found to be bigamous, he was not eligible for suspension of deportation under § 19(c) of the Immigration Act of 1917, as amended, 8 U.S.C.A. § 1254 (c).

Among the evidentiary items relied upon by the hearing officer and the Board of Immigration Appeals in reaching the above conclusions of fact, are the following:

1. At the 1943 hearing in the registry proceedings, the following testimony was elicited from one Harry Bura, an acquaintance of petitioner for eleven years:

"Q. Prior to his marriage, did he ever mention having a wife and children in Greece?

"A. Yes, he did. When we first met, he used to talk about bringing his wife and children to the United States, but somehow he never did that. He talks occasionally about his girl and boy that he has in Greece, but he no longer says anything about bringing them to this country."

Petitioner admitted that he made statements to the above effect. His explanation is that he was just "joking."

2. On December 15, 1937, Eugenia Pazakos sought the aid of this Government in locating her husband, Nicholas Pazakos, who (she wrote) departed from Greece in October 1929 as a member of the crew of the SS "Edison." She further stated that she and her husband had two children, a son fourteen years of age and a daughter eleven years of age; that her husband was living with a named woman at a specified address in New York City; that he was a painter by occupation; and that he frequented a coffee shop owned by one Nicolas Diacandreas at 306 West 40th Street, New York City. She enclosed two photographs: one of her husband alone, and the other a family photograph of herself, together with her husband and two children (Exhibit 13).

Petitioner admitted that he was the man in both photographs. He contends, however, that the woman and the two children shown in the photograph are his sister and her two children. Petitioner admitted that he lived at the rooming house of the named woman at the specified address in New York City, and that he is a painter by occupation. It also appears from the record that a witness interviewed in the course of a character investigation testified that petitioner frequented the coffee shop owned by Nicolas Diacandreas at 306 West 40th Street, New York City.

3. The Immigration authorities also had before them a copy of a marriage certificate (Exhibit 17) forwarded by the American Embassy in Athens, Greece. This certificate referred to the marriage of "Nicholaos G. Pazakos" to "Evgenia Mich. Silivestrou" on January 26, 1923 in Piraeus, Greece. The certificate also recited that the marriage had not been dissolved. In addition, the American Embassy forwarded birth certificates of a daughter of Nicholas and "Evangelia" Pazakos, who was born in Piraeus, Greece, in 1927, and a son of Nicholas Pazakos, who was born in Piraeus, Greece, in 1923.

The American Embassy conducted an exhaustive investigation in Greece and reported (Exhibit 18), in part, as follows:

" *   *   * the Embassy has ascertained that Nicholas Pazakos, born at Kalymnos, Dodecanese Islands, on December 6, 1903, left for the United States in 1929, on the SS *Edison,* on which vessel he served as fireman. He has not since returned to Greece. He deserted his wife, Evgenia Michael Pazakos, nee Silivestrou, to whom he was married in Piraeus, Greece, on January 26, 1923. *   *   * In order further to assist in the identification of the individual under reference, it has been learned that Nicholas Pazakos has one married sister by the name of Marika Rouvineti, *   *   *. This sister is now residing at Odos Anapavseos Nekron, Piraeus; and a brother, named Manolis Pazakos, who left for England in 1939, *   *   *."

Petitioner admitted that he has lived in Piraeus, and that he has a brother and sister as named in the above-quoted report. However, he continued to deny that he was ever married to Eugenia; that he was the father of her children, and that he came into the United States aboard the SS "Edison" in 1929.

Petitioner also offered in evidence a birth certificate showing that a person of his name was born in Constantinople. The proffered evidence was rejected on the ground that it did not necessarily prove that petitioner was the person described therein. It is highly significant that the record contains a "General Information Form" of the Immigration and Naturalization Service, sworn to by petitioner on May 15, 1944, in which he stated (in response to question "5[a]") that he was born on December 6, 1903 in the town of *"Kalemos,* Greece."

4. The record contains "Certificate of Arrival of Alien Seaman or Airman." This certificate states that a Nickolaos Bajakos," a twenty-six-year old male, height five feet, six inches, of Greek nationality, arrived in New York City on October 20, 1929 as a fireman aboard the SS "Edison"; said "Nicholaos Bajakos" being engaged at Piraeus, Greece. "Nicholaos Bajakos" was reported as having deserted ship in New York City on October 25, 1929.

The respondent's position is that the "Nicholaos Bajakos" described in the Certificate of Arrival and the petitioner, are one and the same. Petitioner denies this. He points to the different spelling of the last name, and the difference in height. The certificate describes "Bajakos" as being five feet six inches; petitioner's counsel states he is five feet nine inches. The hearing officer of the Immigration Service took the position that such discrepancies are not unusual in certificates of arrival.

■■ It is well-established that hearings in deportation proceedings are not circumscribed by the traditional rules of evidence and procedure that govern judicial hearings. Marcello v. Ahrens, 8 Cir., 1954, 212 F.2d 830, affirmed Marcello v. Bonds, 1955, 349 U.S. 302, 75 S.Ct. 757; United States ex rel. Harisiades v. Shaughnessy, 2 Cir., 1951, 187 F.2d 137, 141 and cases cited affirmed 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586; Belizaro v. Zimmerman, 3 Cir., 1952, 200 F.2d 282; Kielema v. Crossman, 5 Cir., 1939, 103 F.2d 292; Hays v.

738

Hatges, 8 Cir., 1938, 94 F.2d 67; Hays v. Zahariades, 8 Cir., 1937, 90 F.2d 3; Reynolds v. United States ex rel. Dean, 7 Cir., 1934, 68 F.2d 346; Palmer v. Ultimo, 7 Cir., 1934, 69 F.2d 1. To render a deportation hearing unfair "the defects complained of must be such as to lead to a denial of justice." Marcello v. Ahrens, supra, 212 F.2d at page 837. But cf. United States ex rel. Lindenau v. Watkins, D.C.S.D.N.Y.1947, 73 F. Supp. 216. The record of the proceedings clearly indicates that petitioner was given a full and fair hearing.

■ Furthermore, the Administrative Procedure Act, 60 Stat. 237 (1946), 5 U.S.C.A. § 1001 et seq., applies to deportation proceedings. Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616. Section 10(e) (B) (5) of the Act provides that the reviewing court shall set aside agency action, findings and conclusions only when they are "unsupported by substantial evidence." The Supreme Court has defined "substantial evidence" as meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, 1938, 305 U.S. 197, 217, 59 S.Ct. 206, 217, 83 L.Ed. 126. The Supreme Court expanded that definition in National Labor Relations Board v. Columbian Enameling & Stamping Co., 1938, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 where it stated:

"Substantial evidence * * * must do more than create a suspicion of the existence of the fact to be established. * * * it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."

■ Upon a detailed analysis of the entire record, it is my firm opinion that the order of deportation of the Immigration authorities is based upon substantial evidence; that no issue of material fact exists, and that respondent is entitled to judgment as a matter of law.

The petitioner's application is denied. The respondent's motion for summary judgment is granted.