**Andrew Peter YIANNOPOULOS, Plaintiff-Appellee,**

v.

**Robert H. ROBINSON, District Director of Immigration, U. S. Immigration and Naturalization Service, Defendant-Appellant.**

**No. 11816.**

United States Court of Appeals
Seventh Circuit.

Aug. 23, 1957.

Robert Tieken, U. S. Atty., and John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., Edwin A. Strugala, Chicago, Ill., Asst. U. S. Attys., of counsel, for appellant.

Pearl M. Hart and Edmund Hatfield, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, LINDLEY, Circuit Judge, and BRIGGLE, District Judge.

LINDLEY, Circuit Judge.

Defendant appeals from a judgment of the district court setting aside deportation proceedings against plaintiff. On

February 17, 1954, a warrant for plaintiff's arrest was issued by defendant, District Director of the United States Immigration and Naturalization Service, in which plaintiff was charged with having become a member of the Communist Party subsequent to his entry into the United States, in violation of Section 241(a) of the Immigration and Nationality Act of 1952. 8 U.S.C.A. § 1251(a) (6) (C) (i). Plaintiff, a resident alien, is a native of Greece, who, having last entered the United States in 1913, has since resided here continuously.

At the deportation hearings before a Special Inquiry Officer, two paid informers testified as to plaintiff's membership in the Communist Party. Upon the advice of counsel, plaintiff refused to be sworn, or to answer any questions and relied on the testimony of several character witnesses. The Inquiry Officer concluded that plaintiff had been "a member of the Communist Party of the United States from about November or December 1929 to at least the end of 1933.", and ordered that he be deported. The Board of Immigration Appeals dismissed plaintiff's appeal.

On August 8, 1955, plaintiff filed his complaint in the district court, asserting that the order of deportation was invalid, and urging *inter alia* that it was not based upon reasonable, substantial and probative evidence, as required by the Immigration and Nationality Act, 8 U.S.C.A. § 1252(b) (4), and that he had been denied a fair hearing guaranteed by the Due Process Clause of the Fifth Amendment. The district court specifically found that the hearing was unfair and did not conform to due process, "such unfairness being particularly shown in the manner in which the hearing officer sustained the Government's objections to evidence proffered by plaintiff and overruled plaintiff's objections to incompetent and immaterial testimony of the Government's witnesses." In addition, the court held that the order was not supported by reasonable, substantial and probative evidence.

At the outset, it should be observed that there is no doubt that the procedure invoked by plaintiff in seeking review of this deportation order under § 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e) was proper. Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868; Rubinstein v. Brownell, 92 U.S.App.D.C. 328, 206 F.2d 449, affirmed 346 U.S. 929, 74 S.Ct. 319, 98 L. Ed. 421; Marcello v. Ahrens, 5 Cir., 212 F.2d 830, affirmed 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107.

In considering the issues presented, we are mindful of the admonition to abstain from emotional reaction presented by the severity of the situation, for, as emphasized by Mr. Justice Jackson, in Harisiades v. Shaughnessy, 342 U.S. 580, 587–588, 72 S.Ct. 512, 518, 96 L.Ed. 586: "That aliens remain vulnerable to expulsion after long residence is a practice that bristles with severities. But it is a weapon of defense and reprisal confirmed by international law as a power inherent in every sovereign state * * *." On the other hand we take cognizance of the extreme caution and care necessary in treating this delicate and serious situation. As stated in Bridges v. Wixon, 326 U.S. 135, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103: "Here the liberty of an individual is at stake * * *. We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness." See also, Bilokumsky v. Tod, 263 U.S. 149, 156, 44 S.Ct. 54, 68 L.Ed. 221.

It is clear that, in a deportation proceeding, a resident alien is entitled to the guarantees of a fair hearing before a tribunal which meets currently prevailing standards of impartiality. Kwong Hai Chew v. Colding, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576; Wong Yang Sung v. McGrath, 339 U.S. 33,

70 S.Ct. 445, 94 L.Ed. 616. Among the guarantees without which there would be an absence of procedural due process are reasonable notice, the right to examine witnesses, to testify, to present witnesses, and to be represented by counsel. Hyun v. Landon, 9 Cir., 219 F. 2d 404; Marcello v. Ahrens, supra. As the Supreme Court pointed out in Bilokumsky v. Tod, 263 U.S. 149, 157, 44 S. Ct. 54, 57, 68 L.Ed. 221: "To render a hearing unfair the defect, or the practice complained of, must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process." As we said in United States ex rel. Schlimmgen v. Jordan, 7 Cir., 164 F.2d 633, 634: "Courts may not interfere with administrative determinations unless, upon the record, the proceedings were manifestly unfair, or substantial evidence to support the administrative finding is lacking, or error of law has been committed or the evidence reflects manifest abuse of discretion." See also Kielema v. Crossman, 5 Cir., 103 F.2d 292.

■ In considering specifically, plaintiff's averments that a mass of incompetent and irrelevant testimony was introduced over proper objection, parenthetically, it should be observed that it is accepted doctrine that the strict common law rules of evidence do not apply to an administrative hearing and that the admission of incompetent and irrelevant matter is not reversible error, if there is substantial evidence to sustain the decision of the agency. Navarrette-Navarrette v. Landon, 9 Cir., 223 F.2d 234; United States ex rel. Impostato v. O'Rourke, 8 Cir., 211 F.2d 609; Sisto v. Civil Aeronautics Board, 86 U.S.App. D.C. 31, 179 F.2d 47; Jung Sam v. Haff, 9 Cir., 116 F.2d 384; Hays v. Zahariades, 3 Cir., 90 F.2d 3. And, as stated in Tisi v. Tod, 264 U.S. 131, 133, 44 S.Ct. 260, 261, 68 L.Ed. 590: "the denial of a fair hearing is not established by proving merely that the decision was wrong. * * * This is equally true whether the error consists in deciding wrongly

that evidence introduced constituted legal evidence of the fact or in drawing a wrong inference from the evidence. The error of an administrative tribunal, may, of course, be so flagrant as to convince a court that the hearing was not a fair one."

In Hyun v. Landon, 9 Cir., 219 F.2d 404, a somewhat similar problem as that presented here confronted the court. There, the alien had objected to questions which he felt were improper under the rules of evidence. The hearing officer had seriatim overruled his objections. It was argued that the officer had admitted a mass of incompetent evidence which fatally corrupted the hearing. In reply the court stated (219 F.2d at page 407): "It would seem clear that the action of the hearing officer in rejecting all of appellant's motions and objections was not in and of itself a denial of due process of law, without a showing that the objections were well taken, and that the action actually resulted in a denial of due process."

■ However, after scrupulous examination of the record, we conclude that most of plaintiff's objections were well founded and that by the admission of a mass of incompetent, irrelevant and hearsay evidence, though form was observed, plaintiff was denied the substance of a fair hearing. There is no need to go to great lengths in describing the multitude of erroneous rulings presented by the record. Indeed, such an attempt would be misleading, for, as previously stated, the ordinary rules of evidence are not generally adhered to. Rather, it is the overall denial of justice which impels our conclusion. Suffice it to say, that, without the admission of this evidence, it is, at least, highly uncertain whether the finding of the Special Inquiry Officer would have been made. It is on this basis that we conclude that the hearing was unfair. This line of thought finds support in the language of the Supreme Court in Bridges v. Wixon, 326 U.S. 135, 156, 65 S.Ct. 1443, 1453, 89 L.Ed. 2103: "In these habeas corpus proceedings the alien does not prove he

had an unfair hearing merely by proving the decision to be wrong \* \* \* or by showing that incompetent evidence was admitted and considered. \* \* \* *But the case is different where evidence was improperly received and where but for that evidence it is wholly speculative whether the requisite finding would have been made. Then there is deportation without a fair hearing \* \* \*."* (Emphasis supplied.)

Furthermore, we conclude that, on the basis of the record before us, the order is not supported by evidence which is reasonable, substantial and probative of the issue. Of course, we are aware of the narrow scope of review within which we must operate and recognize that matters of credibility are properly for the trier of the facts. However, as pointed out in Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126: "substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, although it is up to the trial tribunal to resolve the conflict of testimony, nevertheless, as emphasized in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456: "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." The court, in Universal Camera, 340 U.S. at page 488, 71 S.Ct. at page 465, added: "Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

Briefly, the record discloses that Nowell, one of the government's salaried witnesses, who, at one time held a high position in the Communist Party in Detroit, the former home of plaintiff, has acted as a professional witness in a multitude of Congressional hearings, deportation proceedings, and Communist trials. Syrakis, the other government witness, has likewise testified in numerous hearings. In addition, it is at least worthy of notation that both witnesses were relating circumstances which occurred over twenty years before, and witness Nowell admitted that he had not seen plaintiff after 1934 until the date of the hearing. Nowell stated that he first met plaintiff in 1929 at a meeting at the Greek Workers Educational Club located just off Gratiot Street in Detroit and that this meeting was "closed" so that only Communist Party members could attend. There is additional testimony that he saw plaintiff at other closed meetings several times from 1930 to 1933. On the other hand, it is clear that he saw plaintiff many times at meetings which were not closed to outsiders. Further, the testimony as to the specific meetings is vague and indefinite as to time or place and as to whether the specific meetings which plaintiff attended were open or closed. And, in identifying persons present at the various meetings, Nowell admitted that those named were those he knew best, as opposed to those who were actually present. Syrakis testified that the Greek Workers Club did not move to the Gratiot Street location until 1934, well after the time identified by Nowell. Further, Syrakis stated that he saw plaintiff at a closed Communist meeting in 1935 when it already had been established that plaintiff at that time was no longer a member of the party. Then Syrakis went on to state, in an attempt to explain the discrepancy, in complete contradiction of himself as well as of Nowell, that ex-party members could attend closed meetings and that plaintiff had merely been borrowed for the meeting.

Finally, Syrakis swore that as Secretary of the Greek Political Bureau he had access to party records including membership lists and that plaintiff's name was on the list. No such list was ever produced. It is obvious that such evidence is nothing more than pure hearsay. It is the receipt of this type of evi-

dence which is to be condemned as highly prejudicial and which may render a hearing unfair. Bridges v. Wixon, supra.

We are in agreement with the findings of the district court that not only was there a want of reasonable, substantial and probative evidence to support the order of deportation, but that plaintiff was not afforded a fair hearing.

The judgment is affirmed.

BRIGGLE, District Judge (dissenting).

I have carefully studied the Transcript of Proceedings before the Special Inquiry Officer of the Immigration and Naturalization Service in this case, and I am unalterably led to the conclusion that there was substantial evidence to support the administrative findings of fact; that no error of law, requiring notice by this Court, was committed; and that on the whole record the plaintiff here (respondent before the examiner) had a fair hearing. Feeling that there has been no denial of justice to the plaintiff, I respectfully dissent from the conclusion reached by my associates.